CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT,
v. ROBERT CUTCHALL ET AL., APPELLEES.

114 N. W. 2d 6

Filed March 9, 1962. No. 35087.

*Herbert M. Fitle, Bernard E. Vinardi, Irving B. Epstein, Frederick A. Brown, Benjamin M. Wall, Edward M. Stein,* and *Steven J. Lustgarten,* for appellant.

*Marks, Clare, Hopkins & Rauth,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This is an action brought by the city of Omaha, as plaintiff and appellant, to enjoin the defendants and appellees from using the northerly portion of certain lots hereinafter described for commercial purposes.

The defendant Cutchall was the tenant in possession of the lots under lease from the defendants Demetrie C. Siampaus, Sophia I. Siampaus, and Stanley K. Komorski, the owners thereof.

Plaintiff's petition seeks to restrain the defendants from using Lots 4, 5, and 6, Block 9, Cloverdale Addition to the city of Omaha for commercial purposes except portions of those lots lying within 125 feet of the northeast property line of Saddle Creek Road. It sets out that the portions of the lots described were zoned by the city on March 1, 1945, in the sixth residential district and the regulations applying to said district as claimed by plaintiffs are set out in the petition. They provide in effect that a building or premises in such district shall be used only for residential purposes, either as a single-family or 2-family dwelling, except only for off-street parking where it adjoins commercial or industrial districts. The petition alleges that the premises were not used for parking of vehicles or for

commercial purposes on March 1, 1945, when the zoning ordinance became effective, but that some time thereafter defendants commenced using the same for commercial purposes in that vehicles were permitted on said property in order that their occupants could transact business from the vehicles so parked by ordering, paying for, and consuming food and beverages while on the premises; and that defendant Cutchall has used the premises for such purposes and the defendant owners have allowed the realty to be so used in violation of the ordinances of the city and the laws of the State of Nebraska. Plaintiff prays that the court enjoin the defendants from so using the premises.

The answer of the defendants contains a general denial and sets out that the defendants purchased the lots on separate dates, all on or prior to April 24, 1944. It further alleges that so much of said lots as were within a distance of 125 feet of Saddle Creek Road, which is the remainder of the lots, were by the zoning ordinance of March 1, 1945, placed in the second commercial district. It then alleged a nonconforming use antedating the passage of the purported zoning ordinance by reason of a popcorn stand on Lot 7 from which patrons were served popcorn, candy, gum, and soft drinks in cars parked on all of said lots in both zoned areas, which use was thereafter continued by occupants of a grocery store whose customers parked on all parts of said lots and, after 1951, by defendant Cutchall. The original ordinance permitting parking in the residential zone in areas adjoining commercial and industrial districts was pleaded. It varied somewhat from the one set out in plaintiff's petition. Defendants claimed the one set out in their answer authorized them to use the parking areas as they were doing.

The answer prayed the petition be dismissed. There was a cross-petition asking for a determination of defendants' nonconforming use as to the portion of the

lots placed in the sixth residential district, and for further equitable relief.

Plaintiff answered the cross-petition by general denial and the matter proceeded to trial without the filing of a reply to the answer.

On December 21, 1960, judgment was entered by the trial court, finding for the defendants and denying the injunction, but making no disposition of the cross-petition.

Plaintiff's motion for a new trial being overruled it has perfected an appeal to this court.

Plaintiff's assignments of error, insofar as they are discussed in its brief and need be considered by this court, are that the judgment is contrary to the law and the evidence.

The briefs of both parties discuss at length the matter of the rights of the defendants under the several zoning ordinances in regard to parking on that portion of the lots zoned for sixth residential district purposes. There is no question that the original ordinance of March 1, 1945, and the amendments passed and in force prior to and through 1951, allowed a "parking area" adjoining a commercial or industrial area. It is not disputed that the defendant Cutchall established his root beer drive-in in that year and has ever since served his customers in their cars in the parking area within the residential zone. The disputed question however, which is briefed by both parties, is what is meant by the words "parking area" with respect to the uses which are permitted thereon. The defendants claim that "parking" includes not only permitting customers to leave their cars on the lots and remain seated therein, but should be construed to permit their being there waited on by carhops and their taking of orders and acceptance of money, all as is the usual practice at drive-ins. The only uses permitted by the ordinance in the residential zone is a residential use or parking in areas adjoining the commercial and industrial area. This court has held that: "Where

the provisions of a zoning ordinance, as to the uses of property which are permitted or which are prohibited in certain districts, are expressed in common words of everyday use, without enlargement, restriction, or definition, they are to be interpreted and enforced according to their generally accepted meaning." Henke v. Zimmer, 158 Neb. 697, 64 N. W. 2d 458.

It would appear that parking should be construed as allowing car operators to leave their cars attended or unattended, or to remain seated therein when not in operation. Whether this would include commercial transactions when cars are parked in commercial districts is not before us as the area involved is residential. This permissive use of premises adjacent to the commercial districts appears to be for the purpose of permitting the residents in the sixth residential district area, and elsewhere, to leave their cars while they enter the second commercial zone adjoining to attend to business matters. This cannot be construed to allow those engaged in business in the commercial area to go upon the parking areas in the residential district and there conduct business where commercial enterprises are prohibited.

Defendants introduced evidence in support of their claim of a nonconforming use antedating the ordinance in 1945 by reason of the operation of the popcorn stand and plaintiff's offered testimony to the contrary. Without question a popcorn stand was brought there in the fall of 1944. It was moved at least once, and probably two or three times, from one portion of the lots to another in the commercial area. There is testimony that customers were served popcorn, gum, candy, and soft drinks in their cars in all, or parts of, the area now zoned as sixth residential district. However, there is evidence which tends to show that the business did not start until after March 1, 1945, and that such service to cars was either nonexistent or at least restricted to a very limited area of that involved. In view however of our deci-

sion it will be unnecessary for us to consider this matter further.

We now come to the consideration of what in our opinion is the controlling question in this case. That is the validity of the zoning ordinance as applied to that portion of the lots zoned in the sixth residential district.

This court has hitherto laid down certain rules in regard to actions with respect to zoning ordinances. In City of Omaha v. Glissmann, 151 Neb. 895, 39 N. W. 2d 828, some of them are stated as follows:

"The city of Omaha under its home rule charter has the power, by ordinance, to zone the city in the interest of public health, safety, morals, and the general welfare. Any such act of the city must however not be unreasonable, discriminatory, and arbitrary and it must bear some relationship to the purpose or purposes sought to be accomplished by the ordinance.

"In determining the validity of a city ordinance regularly passed in the exercise of police power, the court will presume that the city council acted with full knowledge of the conditions relating to the subject of municipal legislation.

"What is the public good as it relates to zoning ordinances affecting the use of property is, primarily, a matter lying within the discretion and determination of the municipal body to which the power and function of zoning is committed, and, unless an abuse of this discretion has been clearly shown, it is not the province of the courts to interfere.

"To overturn a city ordinance on the ground that it is unreasonable and arbitrary or that it invades private rights, the evidence of such facts should be clear and satisfactory."

In City of Lincoln v. Foss, 119 Neb. 666, 230 N. W. 592, a zoning ordinance of the city of Lincoln was held valid and in such a case it was held that a city may properly sue to enjoin the operation of a restaurant or commercial business in violation of a zoning ordinance.

It appears from these rules that the plaintiff's action may be maintained and the defendants enjoined from violating the ordinance by commercially using the parking areas in the sixth residential district unless the ordinance is clearly shown to be arbitrary and unreasonable with respect to the property involved.

It now becomes necessary for us to describe the premises involved, the nature of the surrounding property, and their location with respect to the zoned districts of the city. The premises owned by the defendants Siampaus and Komorski which were zoned by the plaintiff in 1945, consist of 6 contiguous lots located in that portion of the north half of Block 9, Cloverdale Addition to Omaha, Nebraska, which lies east of Saddle Creek Road. They were numbered from east to west, Lot 4 being the farthest east and Lot 9 being the farthest west. None of them were, or now are, corner lots, 3 lots in the half block being still farther east of Lot 4, and a filling station located to the west of Lot 9 on a tract which in the exhibits is not numbered. With the exception of Lots 8 and 9, which are not involved in this litigation, they are rectangular in shape. Exhibit 8 is a plat in evidence drawn to scale and shows the premises and their location. Lots 4, 5, 6, and 7 are approximately 150 feet long north and south. Each lot is 50 feet wide, east and west. In 1945, they were bounded on the north by Seward Street which has since been widened and is now known as Happy Hollow Boulevard. Their south end abuts a 20-foot alley. Slightly to the west of the lots involved in this litigation Saddle Creek Road extends through the area in a diagonal line running from the southeast to the northwest on a course approximately 55 degrees west of north.

In zoning this particular area the ordinance of 1945 placed the area within 125 feet of the northeasterly line of Saddle Creek Road in the second commercial district. All the premises beyond 125 feet to the east of Saddle Creek Road were zoned in the sixth residential district,

making the division between the two zones a line parallel to, and 125 feet easterly from, Saddle Creek Road. This line cuts diagonally through these premises.

The result of this line as it affects the portion of the lots involved that lie in the commercial zone becomes quite apparent from the plat. On Lot 4, being the farthest east, the diagonal line enters 8 feet north of the south end of the lot. It passes through the west boundary of Lot 4 and enters Lot 5, slightly more than 40 feet north of the south line. Extended northwesterly it enters Lot 6, approximately 44 feet north of the same line and leaves it as it enters Lot 7, 76 feet north thereof.

The root beer stand in question is located in the northerly portion of the commercial area in Lot 6, the stand extending west over the line into Lot 7. The area, zoned as commercial in Lots 5, 6, and 7, is obviously too small to build any commercial buildings of size even if there were no commercial setback provisions in the ordinance. The ordinance of March 1945 provided for a sideyard of not less than 5 feet adjoining a residential district and a rear yard of 35 feet but provided, where it adjoined a street or alley, one-half of the alley, which in this block is 20 feet wide, could be included as the rear yard. There are front yard requirements but it is questionable whether they would have any application to commercial building adjoining an alley as these do. It is clear that the small portions of the lots in the commercial area, having little depth and on one side a diagonal dimension, are of no substantial usage for commercial purposes. They can be utilized only for parking or small business structures and have been so used since 1951 at least.

Under the ordinance Lots 4 and 5 may have dwellings built thereon as the commercial area permits them also. However, the area about these lots from pictures and plats in evidence is clearly commercial in character. Lot 6 has on it the root beer stand. On Lots 7 and 8, immediately to the west of Lot 6, is a grocery store

owned by the defendants whose customers, according to the evidence, use at least part of the area for parking. West of this store is a filling station. Across the 20-foot alley is a commercial building called the Homy Bar. Adjoining it to its east is a filling station. Saddle Creek Road is shown to be commercial in character on both sides.

It is apparent that running the line between the two districts diagonally through these lots affected their use and value by including parts of them in commercial areas and parts of them in residential areas, each area in each lot being bounded on one side with a diagonal line. The commercial area thus zoned for practical purposes was of no substantial use aside from something similar to that to which it is now being used. The residential portion was immediately bounded by the commercial area in the lots themselves and the lots in turn directly joined the business district.

A picture of a good portion of these lots, taken in 1945 from the filling station about the time of the original zoning, was introduced in evidence by the plaintiff. It shows that the portion of the lots affected by this litigation was wholly unimproved. Seward Street was unpaved and the area along Seward Street appears unimproved except for one residence. No reason is given by the city for the necessity of zoning in this peculiar manner. Nothing is shown why it would advance the interest of the public health, safety, morals, or welfare. Though amendments have been made to the zoning ordinance, their requirements are substantially the same as originally.

Since 1945, residences have been built not far from this area. From the map, exhibit 17, it appears that those to the north are across Happy Hollow Boulevard which has been created by widening Seward Street and the plats show its width to be 230 feet. The homes on the east end of the block appear to face the east on Forty-ninth Street which is a cross-street. Some of the

witnesses for the plaintiff lived on the other side of Happy Hollow Boulevard and on Forty-ninth Street. They testified for the city, objecting to their proximity to the defendants' property because of the commercial use of the residential area. They claim to have built nice homes and the photographs so indicate. They were more favored by the zoning. The defendants' premises, if used as a residential area, would be for all practical purposes immediately against and on two sides surrounded by the business district.

It is true that zoning lines between areas must run somewhere, that the city is empowered to fix them, and that unless they are clearly shown to be unreasonable and arbitrary courts will not interfere with the discretion of the zoning authorities.

However zoning does consist of more than looking at a map and drawing lines thereon and in case a zoning ordinance acts towards an owner's property unreasonably and arbitrarily, they will not be upheld.

The general rule with respect to boundary lines as appears in 58 Am. Jur., Zoning, § 42, p. 967, is as follows: "A zoning ordinance may be held invalid as applied to particular property because of its inclusion thereof in a particular zone by an arbitrary, unreasonable, discriminatory, and unnatural running of boundary lines not in accord with a well-considered plan. This rule has been applied as to a boundary line running through parts of a single property, and a boundary line running across an intersection to include a corner lot. A zoning regulation has also been regarded as discriminatory where it affected property differently on adjoining blocks, or within the same block on opposite sides of the street."

Weber v. City of Grand Island, 165 Neb. 827, 87 N. W. 2d 575, is a case where the neighboring landowners brought an action for an injunction against the city of Grand Island to declare illegal and void an ordinance of the city based upon a report of its zoning commission

by which certain real estate which had been zoned in Class B residential was transferred to a Class B business district. The neighboring owners claimed there was no basis for the change and that it resulted in spot zoning. This court reversed the judgment of the district court which had sustained the rezoning. The rules set out in the cited case however are the same as those in the other cited cases. This court stated that on appeal the decision of the zoning board in granting a variation from the zoning ordinance would not be disturbed unless it was found to be illegal or, from the standpoint of fact, it is not supported by evidence, or is arbitrary and unreasonable, or clearly wrong. We held in the cited case that the action of the city was arbitrary, illegal, and discriminatory.

In Coulthard v. Board of Adjustment, 130 Neb. 543, 265 N. W. 530, this court in an action brought in the district court to reverse a decision of the board of adjustment of Neligh, Nebraska, held that the city council under a zoning ordinance cannot restrict the use of property in an unreasonable or arbitrary manner, and that to permit a filling station on one side of the main street and deny it to one across the same street was unreasonable and arbitrary.

The case of Peterson v. Vasak, 162 Neb. 498, 76 N. W. 2d 420, was an appeal from the district court for Douglas County which had sustained the action of the board of appeals of the City of Omaha. The board of appeals had refused to grant and issue a certificate of occupancy of the land involved authorizing the applicant to construct a single-family dwelling on certain designated land. The residence was sought to be built in that area which was zoned first residential district. The ordinance zoning the district required an area of 20,000 square feet per family. There were only 13,619 square feet in the tract. The regulations in regard to the front and rear yards and side yards further restricted building on the triangular tract involved. The court considered

the matter de novo and directed its attention to section 14-411, R. R. S. 1943. With respect to the board's ruling, this court stated that the board had abused its discretion, that its ruling was arbitrary, and that its action would be set aside on appeal. There was of course in the cited case no way in which the land could be used for building as it had been zoned.

In Standard Oil Co. v. City of Kearney, 106 Neb. 558, 184 N. W. 109, 18 A. L. R. 95, this court held that a municipal corporation could not, under the general welfare provisions of its charter, forbid the operation between designated points on its principal streets of a filling station for automobiles, to reach which cars must cross the curbs. In a suit brought by the owner of a filling station to enjoin the enforcement of the ordinance, the court in the cited case, stated: "In the exercise of police power delegated to a city, it is generally for the municipal authorities to determine what rules, regulations and ordinances are required for the health, comfort and safety of the people, but their action is not final and is subject to the scrutiny of the courts.

"To overturn a city ordinance as being arbitrary, unreasonable or discriminatory, the evidence of such facts should be clear and satisfactory."

Similar rules apply when the city, as in the case before us, seeks by injunction in a court of equity to enforce and perpetuate a zoning ordinance. A court of equity will not enforce a zoning ordinance when its operation and effect will unreasonably and arbitrarily deprive the owner of the substantial use and value of his property and when the purpose of the zoning did not require the hardship to be inflicted.

Further citation of authorities is unnecessary. It is apparent from the evidence that the zoning of the defendants' property by which the lots involved were placed in two zoning districts, one commercial and one residential, separated by a diagonal line drawn through them which rendered them generally unfit for use in

either zoning district, was unreasonable, arbitrary, and void. In such a case a court of equity will not by injunction enforce the purported action of the city.

The judgment of the district court under the evidence set forth was proper and should be affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.