AMG ASSOCIATES, A NEW JERSEY PARTNERSHIP, PLAIN-
TIFF-APPELLANT, v. TOWNSHIP OF SPRINGFIELD, A
MUNICIPAL CORPORATION, THE TOWNSHIP COMMIT-
TEE OF THE TOWNSHIP OF SPRINGFIELD AND PAUL
GREENSTEIN, AS BUILDING INSPECTOR OF THE
TOWNSHIP OF SPRINGFIELD, DEFENDANTS-RESPON-
DENTS, AND THE BOARD OF ADJUSTMENT OF THE
TOWNSHIP OF SPRINGFIELD, DEFENDANT.

Argued December 4, 1973—Decided May 9, 1974.

*Mr. Vincent J. Apruzzese* argued the cause for plaintiff-appellant (*Messrs. Apruzzese & McDermott,* attorneys; *Mr. Apruzzese,* of counsel, *Mr. Frederick T. Danser, III,* on the brief).

*Mr. Joel S. Ziegler* argued the cause for defendants-respondents (*Messrs. Goldhor, Meskin & Ziegler,* attorneys; *Mr. Sanford A. Meskin,* of counsel; *Mr. Ziegler,* on the brief).

No appearance made or brief filed on behalf of defendant Board of Adjustment.

The opinion of the Court was delivered by

HALL, J. This zoning case involves the following situation: A municipality strip zones the frontage along a main thoroughfare for certain business uses to a specified depth, regardless of property lines. The land to the rear, fronting on side streets, is essentially limited to residential use. An

owner's main street property extends into the residence zone, resulting in a so-called "split lot." That portion limited to residential use is much too small to meet the minimum area, frontage and side yard requirements of a lot in that zone. Even were some variance therefrom granted, the segment could not practically accommodate an acceptable dwelling. The consequence is that this rear portion is unusable to the present owner for any purpose unless some business use is permitted. The questions presented are whether the zoning ordinance, as applied to such portion of a main thoroughfare lot, is invalid as confiscatory and, if so, whether and to what extent the owner should be permitted to use it in connection with his utilization of the major front part of the lot. The problem is a typical and recurring one, although this court has never previously been called upon to decide it.

In the case before us the questions were answered in plaintiff's favor by the Law Division, *sub nom. Grate and AMG Associates v. Township of Springfield,* 117 *N. J. Super.* 130 (1971).[1] On the municipality's appeal, the Appellate Division reversed and directed judgment for defendants. 123 *N. J. Super.* 295 (1973). We granted plaintiff's petition for certification. 63 *N. J.* 582 (1973).

---

[1] The difference in case name is accounted for by the fact that at the time the Law Division action was commenced plaintiff had only acquired title to part of the land involved and was a contract vendee of the remainder owned by Grate.

This litigation has been inordinately protracted. The complaint in the Law Division was filed in July 1969. The matter was not pretried until October 1970 and trial did not take place until April 1971. Judgment was not entered until December 1971 and the appeal was not argued in the Appellate Division until February 1973. Our rules provide that "actions (except negligence actions) to which the State, a county, municipality or other public or quasi-public agency is a party," are entitled to the first preference, the public interest being involved, in scheduling for trial, hearing or argument. *R.* 1:2–5. It is of the utmost importance that all courts and attorneys involved in such cases make certain that this mandate is carried out.

Plaintiff's property consists of four contiguous lots fronting on the northerly side of Morris Avenue (State Highway Route 24) in Springfield, Union County. They comprise the entire block from Short Hills Avenue west to Lewis Drive, a distance of over 250 feet. The total area is about an acre. The depths of the respective lots vary considerably. Lot 1, the most easterly, with a frontage of 105 feet, extends 184 feet deep along Short Hills Avenue. Before plaintiff's purchase it was in separate ownership from the other three and occupied by an old house. Lot 2, the next westerly, has a frontage of 60 feet and a depth of 195 feet. It was likewise formerly the site of an old house. Lots 3 and 4 front a total of 89 feet with a depth of 118 feet, the side line of lot 4 running that distance along Lewis Drive. An antique business was previously conducted in an old barn thereon by the landowner, who also owned lot 2.

The applicable zoning ordinance (referred to as the 1967 ordinance, although not adopted until 1968) zoned the frontage along both sides of Morris Avenue from Short Hills Avenue west for a distance of three blocks as an "O" district to a depth of 150 feet. The land to the rear, extending a considerable distance to the township line and fronting on side streets, is in an "S–60" zone. Permitted uses there are limited to detached single family dwellings, plus certain religious and public uses, and required minimum lot dimensions are an area of 7,500 square feet, a width of 60 feet, a depth of 100 feet and two side yards of 8 feet each. The area is completely built up with older houses of good quality on small lots, many of which do not conform with these dimensional provisions. One such dwelling, fronting on Short Hills Avenue, abuts the rear of plaintiff's lots 1 and 2.

The O zone allows only office buildings (not otherwise defined, except that retail sales are prohibited) and uses permitted in and under the requirements of the S–60 district. For office buildings, a minimum lot area of 20,000 square feet is required, together with a minimum lot width of 100

feet and depth of 100 feet. Minimum yards of 12 feet on the front, 50 feet in the rear and 10 feet on each side are specified. A maximum height of four stories is allowed, but the building may not cover more than 40% of the lot area. In addition, off-street parking must be provided under a formula of one space for each 300 square feet of floor area and a 10 foot fenced and landscaped rear buffer zone must be maintained where an O district abuts a residence district. The maximum size of an office building is thus actually determined by the necessary compliance with all these auxiliary requisites.

The 150 foot depth line split lots 1 and 2 of plaintiff's property with the result that a portion thereof aggregating 6,237 square feet, roughly 15% of plaintiff's entire property, is in the S–60 zone. This is made up of the last 34 feet of lot 1 abutting Short Hills Avenue, about 105 feet wide, and the contiguous last 45 feet of lot 2, about 60 feet in width (which would be landlocked if the two lots were in separate ownership). Even taking both together, the portion falls far short of S–60 zone minimum dimension requirements for construction of a dwelling thereon.

East of Short Hills Avenue, the O zone depth along both sides of Morris Avenue to the central retail business district of the community, a distance of a half mile or so, is 200 feet rather than 150 feet. Due to the great variation in the depths of properties fronting on Morris Avenue, numerous residential properties fronting on side streets are wholly or partly within the O zone, as is the case with a dwelling to the rear of plaintiff's lots 3 and 4. Along all of Morris Avenue there is a great mixture of uses — office buildings, retail and service establishments, garden apartments, and old dwellings remaining from the street's former residential character. This mixture is the result of pre-ordinance uses and commercial uses permitted under the less restrictive zoning ordinance in effect from 1955 to 1968 or allowed by variances. Many current uses extend considerably beyond the present ordinance depth lines. All of this varied develop-

ment along the Avenue has undoubtedly had, and will continue to have, some adverse effect on side street dwelling properties in the abutting residential zone. In this connection it may be noted that the dwelling property fronting on Short Hills Avenue to the rear of plaintiff's lots 1 and 2 faces, in part, the 200 foot deep office building zone on the other side of that street.[2]

Plaintiff first applied to the Board of Adjustment in 1969 under *N. J. S. A.* 40:55-39(d) for a variance with respect to this land beyond the 150 foot depth to use the same for O zone purposes. Its plan was to erect a three story office building about 100 feet square on the O zone portion of lots 1 and 2 and to use lots 3 and 4 and that part of lots 1 and 2 in the S–60 district to meet the off-street parking area requirements of the O zone. A full hearing was held and much expert and other evidence presented. The municipality offered no opposing proofs. Certain residents of the area between the O zone and the township line objected; their real opposition was basically a dislike of any office buildings along Morris Avenue and they have not appeared in the litigation since.

The Board recommended the requested variance to the Township Committee (with certain conditions no longer pertinent), finding that "(1) the portion of said lots in the S–60 district is too small to meet the minimum requirements of the S–60 District, thereby rendering it unusable under the Zoning Ordinance, (2) applicants would be deprived of the appropriate, reasonable and economic use of their property by having only the front 150 feet zoned for

---

[2]Plaintiff on appeal has sought to make much of this reduction in O zone depth from 200 feet to 150 feet beginning at and extending westerly from Short Hills Avenue, suggesting arbitrary discrimination. Although the distinction is suspect (the trial record intimates that it quite likely came about as the result of local political influences), we are not called upon to decide the question since we do not find sufficient in the complaint and pretrial order to establish that such relief was sought by plaintiff.

the proposed use, and being unable to use the remainder thereof for the same uniform purpose, and (3) approval of the variance aforesaid would not be detrimental to the character of the neighborhood, would not adversely affect property values and will not substantially impair the purpose and intent of the zone plan or of the Zoning Ordinance." The governing body refused to approve the recommendation; the reasons given indicated that unusability was not considered to be a sufficient use variance ground.

Plaintiff then commenced this action in lieu of prerogative writ in the Law Division, asserting two alternative causes of action in the complaint. The first was to set aside the denial of the variance and to compel the Township Committee to approve it without the conditions imposed by the Board of Adjustment, which were claimed to be improper. The second sought a declaratory judgment that the zoning ordinance was unconstitutional as applied to plaintiff's rear property because it rendered the same unusable and that plaintiff was entitled to use the same for O zone purposes. Both counts demanded that the Building Inspector issue the necessary permits for the total use plaintiff proposed.

By the time the suit came to trial, plaintiff had changed its building plans and had erected a slightly smaller office building on lots 3 and 4. The 150 foot portion of lots 1 and 2 was adequate to furnish the required parking spaces for this building. After allowing for the 10 foot buffer strip along the rear property line, there remained, beyond the 150 foot depth of lots 1 and 2 and south of the buffer, the strip in controversy, 165 feet wide, varying in depth from 24 feet to 35 feet, which plaintiff desires to utilize for additional parking.

■■ The case was tried, as to both causes of action, on the record made before the Board of Adjustment, plus some additional photographic and documentary exhibits. The municipality still offered no proofs. The trial judge declined to disturb the final municipal action denying the variance application because of the change in physical conditions re-

sulting from the erection of the building at a different loca-
tion on the tract as outlined above, but, on the thesis that
plaintiff had exhausted the administrative remedy by ap-
plying for a variance although with respect to a different
site plan, proceeded to determine the constitutional issue.[3]

---

[3]The Appellate Division criticized this procedural conclusion, say-
ing that the trial court should have withheld consideration of validity
of the application of the ordinance until plaintiff had first presented
the changed circumstances to the municipal bodies by way of a new
application for a variance. It nonetheless went on to state that this
view did not in itself warrant a reversal and proceeded to considera-
tion of the merits of the validity question. 123 *N. J. Super.* at 299–
300. The municipality does not raise the question before us and we
pass it except for a few brief comments.

Ordinarily where an owner claims a zoning ordinance use provision
is invalid as applied to one relatively small piece of land by reason
of substantial hardship, such as here, unusability for any permitted
purpose, relief should first be sought by way of variance under *N. J.
S. A.* 40:55–39(d), for in such situations the local administrative
agencies can generally adequately deal with the problem. A finding
of such undue hardship is not only a sufficient special reason for a
use variance, but usually mandates that result. The agency has au-
thority to condition the use as is appropriate in the particular situa-
tion. The negative criteria of the statutory section can thereby ordi-
narily be met. Review of a denial is by action in lieu of prerogative
writ in the Law Division on the record made before the municipal
agencies. If that court finds the variance should have been granted,
its judgment will direct the appropriate local agency or agencies to
do so, subject to such conditions as the court finds to be called for
without requiring the applicant to go through a complete new variance
proceeding at the local level. Where, however, past events or other
circumstances make it clear that initial or further resort to the local
administrative process would be futile (which appears to be the
case here since the governing body had denied the initial variance ap-
plication), the owner may bypass the local agencies and commence
a prerogative writ action in the Law Division for a declaration of
invalidity as to the parcel. The court, in such a case (or where there
has been a variance denial, the suit attacks that as well as validity,
and the denial must be sustained for some reason), may also declare
the use to be permitted, and any conditions thereof, if such use accords
with that requested by the plaintiff or if the circumstances clearly
indicate that only it should be allowed, there being no pertinent issue
of local zoning discretion involved, without remanding the matter to
require the plaintiff to go through a new or original variance proceed-
ing.

He found the portions of lots 1 and 2 beyond the 150 foot line to be unusable, practically, for any permitted S–60 zone use. This finding is clearly required by the proofs and in fact is not disputed by the municipality. The judge therefore concluded in essence that, while zoning district lines need not conform to property lines and that zone line locations are a matter for local legislative discretion — an elementary proposition not challenged by plaintiff —, when the exercise of that power results in unusability, it becomes unreasonable and arbitrary and consequently invalid as a taking of the property so affected.

The declaratory judgment entered in the Law Division is, however, very broad as to the uses to be permitted on the land in question. It states that plaintiff is entitled to use the same "for office O zone purposes, including use for additional on-site parking in conjunction with the existing office building and parking facilities," provided that if the land is so used, the 10 foot buffer requirements of the ordinance shall be met by the maintenance of such an area between the rear property line and the abutting S–60 residential district. The effect is that, theoretically, the land in question could be used for buildings as well as for additional parking. We understand, however, that plaintiff desires to utilize it only for the latter use and is already maintaining the 10 foot buffer in accordance with ordinance fencing and landscaping requirements.

On the other hand, when the attack involves or affects a large tract or a substantial area comprising several tracts and a declaration of invalidity would indicate the need for rezoning by the municipality, the situation is beyond the intended scope of the variance procedure and the power of the local administrative agencies and the owner or owners may proceed directly to the Law Division, which, if it finds invalidity, may stay the effect of its judgment to afford the opportunity to rezone. See generally *Deal Gardens, Inc. v. Board of Trustees of Loch Arbour*, 48 *N. J.* 492, 496–498 (1967) and cases cited therein; *Bow and Arrow Manor v. Town of West Orange*, 63 *N. J.* 335, 350 (1973) ; *Petlin Associates v. Township of Dover*, 64 *N. J.* 327 (1974).

The Appellate Division reached the contrary result that plaintiff was not entitled to any relief, relying upon a split lot case decided by the former Supreme Court, *Visco v. Plainfield,* 136 *N. J. L.* 659 (Sup. Ct. 1948), which has never been previously cited for its holding and was not referred to in any of the briefs in the instant case. There the land along a main business street was strip-zoned for commercial uses to a depth of 100 feet. Property to the rear thereof was limited to residential purposes. The affected owner's lot along that street had a mean depth of 135 feet. The 35 feet in the residence zone was insufficient in size for such a use and the court appears to have assumed that this rear portion was thereby rendered unusable. The owner was denied a variance to erect an addition to his business building which would extend to a distance of only 12 feet from the rear lot line and quite close to a dwelling in the residence zone. *Visco* may thus be considered to be factually distinguishable from the case before us, since the presence of a business building in the residence zone would have a greater adverse impact upon a nearby residence than a parking use here. The court did not view the situation in that light, however, but rested its conclusion affirming the denial of relief on this broad proposition, which the Appellate Division adopted in reaching its conclusion in the instant case:

Prosecutor's lands are in the main zoned for business, their best use; and the burden cast upon the relatively small portion to the rear because of its natural relation to the adjacent lands adapted to residence uses, and zoned accordingly is purely incidental to the exercise of the zoning authority and offset by the resulting advantages, and thus there is no relievable hardship within the statutory view nor compensable invasion of the fundamental right of private property. (136 *N. J. L.* at 662–663).

We disagree with the proposition and therefore are of the opinion that the Appellate Division was in error. We rather hold to the view that, in the split lot situation, an owner cannot validly be deprived of all reasonable utilization, for the benefit of another private landowner, of that

portion of his land (beyond a *de minimis* situation) which otherwise, by reason of inability to meet the requirements of the zone in which it is situate, is practically unusable, yet remains subject to the burden of taxation. This conclusion stems from the landmark case of *Nectow v. Cambridge*, 277 *U. S.* 183, 48 *S. Ct.* 447, 72 *L. Ed.* 842 (1928), and follows the many cases in this court holding that the zoning of property into idleness by restraint against all reasonable use is invalid as confiscatory and amounting to a taking without compensation. See *e. g., Kozesnik v. Montgomery Township*, 24 *N. J.* 154, 182 (1957); *Morris County Land Improvement Company v. Parsippany-Troy Hills Township*, 40 *N. J.* 539, 554–557 (1963); *Harrington Glen, Inc. v. Municipal Board of Adjustment of the Borough of Leonia*, 52 *N. J.* 22, 29 (1968).[4]

---

[4]It is to be emphasized that we deal in this case only with the split lot situation where there is a deprivation of all practical use of the smaller portion thereof. The approach to the taking problem, and the result, may be different where vital ecological and environmental considerations of recent cognizance have brought about rather drastic land use restriction in furtherance of a policy designed to protect important public interests wide in scope and territory, as for example, the coastal wetlands act, *N. J. S. A.* 13:9A–1 *et seq.*, and various kinds of flood plain use regulation. Cases arising in such a context may properly call for a reexamination of some of the statements 10 years ago in the largely locally limited *Morris County Land* case, *supra* (40 *N. J.* 539). See generally, *Bosselman, et al., The Taking Issue* (Council on Environmental Quality, 1973). The situation before us is also to be differentiated from that of the effect of broad rezoning from less to more restricted uses upon a piece of property, never utilized for the less restricted use, and now constituting an island in the midst of properties which had been so used, as to which see *Odabash v. Mayor and Council of Dumont*, 65 *N. J.* 115, decided this day.

We ought also to add that we see no place in the split lot situation for the necessary application of the buy-sell mechanism delineated for whole undersized lot cases generally the result of pre-ordinance mapping, in *Harrington Glen, supra* (52 *N. J.* 22). The situations are considerably different. We think it would be quite unreasonable to require preliminarily a split lot owner to attempt to sell the unusable portion in the residence zone to his abutting residential neighbor with a right to relief only if the latter declined to buy at a

The view just expressed is in accord with the best considered decisions elsewhere. Representative cases include *Lapenas v. Zoning Board of Appeals of Brockton*, 352 *Mass.* 530, 226 *N. E.* 2*d* 361 (1967); *Spanich v. City of Livonia*, 355 *Mich.* 252, 94 *N. W.* 2*d* 62 (1959); *City of Omaha v. Cutchall*, 173 *Neb.* 452, 114 *N. W.* 2*d* 6 (1962); *Baronoff v. Zoning Board of Adjustment*, 385 *Pa.* 110, 122 *A.* 2*d* 65 (1956); *cf. North Shore Steak House, Inc. v. Board of Appeals of the Incorporated Village of Thomaston*, 30 *N. Y.* 2*d* 238, 331 *N. Y. S.* 2*d* 645, 282 *N. E.* 2*d* 606 (1972). See generally, 1 *Anderson, American Law of Zoning*, § 8.12, Split lots (1968).

In the light of our view, it follows that *Visco v. Plainfield*, *supra* (136 *N. J. L.* 659), must be overruled, at least to the extent of the broad proposition upon which the result was reached.

However, that does not end this case. While some reasonable use of the residentially zoned portion must be permitted, whether the relief is granted by way of variance or, as here, by constitutional attack, the question remains as to the nature and extent of the use to be allowed in such situations. The judgment of the trial court declared, in accord with the relief requested in the variance application, that plaintiff was entitled to use this portion "for office O zone purposes, including additional on-site parking * * *." This we believe is too broad. It amounts to automatically extending the O zone and permitting all uses allowed therein, to the full depth of plaintiff's property within the residential zone, theoretically including, as we have earlier said, an

fair price. (If that neighbor should, however, come forward and offer to purchase the portion at a fair price, relief might be denied as indicated in the cited case; in any event, there is no evidence here that plaintiff's neighbor has any such interest.) Nor in this case do we think it would be reasonable to require plaintiff to utilize so much of its more valuable property in the O zone to combine with the portion in the residence zone to make a conforming residential lot.

office or accessory building as well as parking.[5] The hypothesis for some relief to plaintiff is that the residential portion of the property is otherwise unusable for any purpose. All such an owner should be entitled to is some reasonable use of that portion. It ought be a use consistent with and auxiliary to the O zone utilization, but we think it must be limited to a use of that character which has the least detrimental impact upon the abutting residential property. Here there are really only two possible uses — a building or additional on-site parking. It is obvious that the latter has the lesser detrimental consequences. (The expert testimony before the Board of Adjustment was to the effect that parking would have no adverse impact on the neighboring property, especially in view of the buffer requirement.) We are of the opinion that the trial court judgment should have been expressly limited to use for parking and must be so modified and that, in the circumstances of

---

[5]There is considerable reference in the briefs to a provision in the former (1955) zoning ordinance of the township, which is quite common in local land use enactments, authorizing the Board of Adjustment to "recommend to the Township Committee, in appropriate cases, where the lot of the appellant, as such lot existed at the time of the effective date of this ordinance, lies across the boundary of two Districts, that a permit be granted for the extension into the more restricted district of a lawful conforming use permitted in the less restricted District, but for a distance not exceeding 50 feet measured at right angles to such District boundary." Since the provision is not included in the present ordinance, it has no bearing on the issue before us. We may observe, however, that such a provision, although included in the ordinance under the heading "Specific Types of Variances," actually is rather authorization for the grant of a special exception for a permitted use under *N. J. S. A.* 40:55–39(b), with a lesser standard of justification required rather than in the case of a variance. See the comprehensive discussion of such provisions in *Verona, Inc. v. Mayor and Council of West Caldwell,* 49 *N. J.* 274 (1967). Conversely, provisions of this type cannot validly limit the power of a Board of Adjustment to grant a variance, upon adequate proofs, with respect to property beyond the designated distance. *Smith v. Paquin,* 77 *N. J. Super.* 138, 142–143 (App. Div. 1962).

this case, it has power to so adjudge. See footnote (3), *supra*.

The judgment of the Appellate Division is reversed and the cause is remanded to the Law Division for the entry of a modified judgment in accord with this opinion.

*For reversal and remandment*—Justices JACOBS, HALL, SULLIVAN, PASHMAN and CLIFFORD, and Judges CONFORD and COLLESTER—7.

*For affirmance*—None.