156 N.J. Super. 456 (1976)
384 A.2d 147
MIRIAM HOMES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BOARD OF ADJUSTMENT OF THE CITY OF PERTH AMBOY AND BUILDING INSPECTOR OF THE CITY OF PERTH AMBOY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 6, 1976.
Decided May 5, 1976.
*457 Before Judges LYNCH, LARNER and HORN.
Messrs. Hampson & Millet, attorneys for defendants-appellants.
Messrs. Kovacs, Anderson, Horowitz & Rader, attorneys for plaintiff-respondent.
PER CURIAM.
Plaintiff, a contract purchaser of a lot with a frontage of 25 feet and depth of 90 feet, applied for a variance from the zone requirements in order to construct a one family home. N.J.S.A. 40:55-39(c). The local ordinance required a minimum frontage of 50 feet and area of 5,000 square feet. In addition, the application sought a variance for side yards totalling five feet rather than the minimum requirement of ten feet.
The board of adjustment denied the variance in a resolution which found that the requested variance "would impair the intent and purpose of the Zone Plan" and "would be substantially detrimental to the public good." It also concluded that the applicant had failed to establish the requisite hardship required by the statute.
In its subordinate findings the board pointed out that the variance, if granted, would adversely affect the values of adjacent properties, that there was insufficient proof of inability to dispose of the lot through other means, that there existed potential drainage problems with respect to the rear of the property, and that there are no one-family homes on a 25-foot lot on the entire street.
*458 In an action in lieu of prerogative writs the trial court reversed the action of the board of adjustment and directed the grant of a variance and the issuance of a building permit. The court's sole finding was that "there has been a satisfaction on the part of the plaintiff referable to the requirements as to the negative criteria and hardship."
In assessing the propriety of the judgment below it is advisable to point out briefly the respective limitations on the function of the trial court and the appellate court in reviewing a board's denial of a variance.
It is fundamental that the action of the board is presumptively correct and that plaintiff has the burden to prove that it was arbitrary and capricious. Rexon v. Haddonfield Bd. of Adj., 10 N.J. 1, 7 (1952). The trial court is not permitted to substitute its own judgment for that of the local board, and can only overturn the board's determination if it finds on the record that the board has acted arbitrarily. Ibid. Where the board's action consists of a denial, the court must sustain the same unless there is "an affirmative disclosure that it was unreasonable, arbitrary or capricious." Herman v. Parsippany-Troy Hills Tp. Bd. of Adj., 29 N.J. Super. 164, 167 (App. Div. 1953). See also Ring v. Rutherford Mayor and Council, 110 N.J. Super. 441 (App. Div.), certif. den. 57 N.J. 125 (1970), cert. den. 401 U.S. 911, 91 S.Ct. 876, 27 L.Ed.2d 810 (1971). And at the appellate level we must examine the record to determine whether it supports the trial court's conclusion to that effect. Home Builders Ass'n of Northern N.J. v. Paramus, 7 N.J. 335 (1951).
Our review of the record herein convinces us that the trial court did not make a finding that the board of adjustment acted arbitrarily, but rather decided the case ab initio on its merits. And even if the court's conclusion is interpreted as an implied finding of arbitrariness, the record before the board fails to demonstrate that the applicant bore its burden of proving that the board's action was arbitrary or capricious.
*459 The requested variance sought to construct a home having a frontage of 50% of the ordinance minimum, an area of less than 50% of the required square footage and side yards 30% less than the minimums. The uncontradicted evidence was that there is no other home on the street with a frontage as small as 25 feet.
Under such a factual picture, regardless of the board's finding as to the affirmative hardship criterion, it had sufficient evidence to conclude, within the broad discretion granted to it as a local governmental agency, that the negative criteria of the statute were not met. If the trial court disagreed with this conclusion it was not authorized to substitute its own judgment, for plaintiff failed to establish the arbitrariness which is a prerequisite for the court's interference with the discretion vested in the board of adjustment. For the same reason, as an appellate court, we are also constrained to uphold the determination of the local board regardless of our independent view as to the advisability of the grant or denial of the variance.
Under a section (c) variance (N.J.S.A. 40:55-39(c)) an applicant has the burden of establishing not only the affirmative prequisite of exceptional and undue hardship but also the negative prerequisite that the relief can be granted "without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." See Griffin Const. Corp. v. Teaneck Bd. of Adj., 85 N.J. Super. 472, 475 (App. Div. 1964), certif. den. 44 N.J. 408 (1965); Bierce v. Gross, 47 N.J. Super. 148, 157 (App. Div. 1957). The board found that plaintiff failed to establish this prerequisite, and we conclude that the record fairly supports this finding.
The trial judge relied on Mischiara v. Piscataway Tp. Bd. of Adj., 77 N.J. Super. 288 (Law Div. 1962), in arriving at his conclusion. That case is not controlling because the record before the board was quite different from that before the board herein. There the evidence established that there were six other nonconforming uses in the area on undersized lots. *460 In addition, an expert testified that the construction on plaintiff's lot would neither depreciate the neighborhood nor impair the intent and purpose of the zoning plan. And the board made no factual findings other than the recitation of the statutory language to support the denial. The trial court thus concluded that the board's action was arbitrary.
Another case cited by plaintiff, Griffin Constr. Corp. v. Teaneck Bd. of Adj., supra, is also distinguishable on its facts in that there was evidence of ten other structures in the area on lots with substandard frontage equal to that of the applicant and still others with a frontage less than the ordinance minimum. The court found that the addition of an "eleventh to the ten present dwellings on 40-foot lots" contradicted the board's finding that it would alter the essential character of the neighborhood. Id., 85 N.J. Super. at 475. In addition, the board's findings were wanting in that they merely mouthed the conclusory statutory language without evidential support. In the case at bar the board made more meaningful findings which are supported by the record of the hearing.
Contrary to the conclusion of the dissent herein, we are of the opinion that a remand is inappropriate. The applicant should not be afforded another opportunity to present further proofs. And since we view the board's findings as adequate in light of the burden of proof which the law imposes upon the applicant, we also conclude that a remand for further findings is fruitless.
We cannot accept the premise that mere inability of a property owner to construct a building because of violation of ordinance standards dictates the imperative that a variance be granted. As articulated by the Supreme Court in Collins v. Margate City Bd. of Adj., 3 N.J. 200 (1949):
* * * Reasonable use restrictions in the exercise of the police power pursuant to the Constitution do not constitute the taking of the property for public use within the intendment of the constitutional mandate for compensation in such cases. All property is held in subordination to the police power; and the correlative restrictions *461 upon individual rights  either of person or of property  are incidents of the social order, deemed a negligible loss compared with the resultant advantages to the community as a whole, if not, indeed, fully recompensed by the common benefits. * * * [at 206]
See also, Morris v. Postma, 41 N.J. 354 (1964); Guaclides v. Englewood Cliffs, 11 N.J. Super. 405 (App. Div. 1951); Ridgeview Co. v. Florham Park Bd. of Adj., 57 N.J. Super. 142, 153 (Law Div. 1959).
Judgment is reversed.
HORN, J.A.D. (dissenting).
My disagreement with the conclusions of my learned colleagues rests on three bases. First, in general, I believe that in cases such as the instant one, where the denial of a variance amounts to confiscation of the subject premises, the zoning board is obliged to view the application with a mind to grant relief, if at all possible. This was not done. Second, specifically and apart from the first, I believe that the majority err in accepting the conclusory statements of the zoning board as appropriate findings. Third, the so-called findings of the zoning board are not supported by the evidence adduced before it.
The zoning ordinance in question was enacted in 1962. The present owner of the lot or his family acquired title to it approximately 30 years ago. The record does not disclose that the owner or his family are responsible in any way for the lot's being undersized by selling at any time a portion of a larger tract. There is no contiguous land available for purchase by the owner. Herman v. Parsippany-Troy Hills Tp. Bd. of Adj., 29 N.J. Super. 164 (App. Div. 1953).
Two witnesses testified before the zoning board. Both were presented by plaintiff. The first was Emil F. DePasqual. He identified himself as the president of plaintiff corporation. He described the dimensions and type of house sought to be constructed upon the lot in question. There were no other undersized lots on McKeon Street, on which the tract is located. However, within 200 feet of that lot, on New *462 Brunswick Avenue "right around the corner," there was an older-type dwelling situate on a 25-foot lot. The property on one side of the subject land has a 12-15-foot side yard and on the other about a 10-foot side yard. In the opinion of DePasqual the proposed structure would not detract from the value of the other houses in the neighborhood.
The other witness was a real estate salesman named Zaykov, who testified that commencing November 1, 1974 (about three months before) he had tried to interest neighbors in buying the lot; that he had spoken personally to one neighbor in an attempt to sell the lot and had written to two other neighbors advising that the lot was for sale. He received no response.
Some of the neighbors' objections voiced at the hearing were founded on fear of overcrowding and the presence of children. One objected that the house was being built for speculation. One stated that about three years before, the owner of the lot had offered to sell it to her.
The tract is about 4 1/2 feet higher than the improved lot adjoining to the rear. DePasqual explained how the drainage problem would be resolved. At the conclusion of the hearing the board chairman announced that the board members would make an on-site inspection. The chief objector and all members of his group were invited to attend the inspection. Whether it was made is not known. If it was made, whether the board relied on it is not known. If it did rely on the view it failed to record its findings therefrom, as is required. Gougeon v. Stone Harbor, 52 N.J. 212, 221 (1968).
The resolution of the zoning board in denying plaintiff's application made the following pertinent findings:

* * * * * * * *
3. That the requested variance, if granted would adversely affect the values of adjacent properties.
4. That the requested variance, if granted, would be substantially detrimental to the public good and would impair the intent and *463 purpose of the Zone Plan and Zoning Ordinance of the City of Perth Amboy.
5. That Stewart Zaykov, a salesman for Jacobson, Goldfarb & Tanzman Co. testified that the lot in question was offered to the adjoining and rear property owners, with letters written to two of them and a personal visit to the third, on or about November 1, 1974. These letters were only written on one occasion, without any follow-up whatsoever, and did not even mention price. The Board finds that an insufficient effort was made to these neighbors to sell the property to them and does not constitute a hardship.
6. That the applicant has failed to present testimony to overcome the negative criteria of the statute or to meet the affirmative criteria.
7. That serious drainage problems presently exist to the rear of the property. The Board notes that no expert testimony was presented by the applicant regarding drainage flow.
8. That no one-family homes on 25' lots exist anywhere on McKeon Street. The Board finds that the proposed structure will therefore adversely affect the values of adjacent properties of this neighborhood.
As to the third finding  that the variance would adversely affect the values of adjacent properties  the only testimony was to the contrary.
As to the fourth finding  that the variance would be substantially detrimental to the public good and would impair the intent and purpose of the zone plan and zoning ordinance  this is only a conclusion without any supporting finding of fact, and in the words of the majority opinion (applied in distinguishing Griffin Constr. Corp. v. Teaneck Bd. of Adj., 85 N.J. Super. 472 (App. Div. 1964)) "merely mouthed the conclusory statutory language without evidential support."
As to the fifth finding  that Zaykov wrote only two letters to adjoining owners and made a personal visit to a third  no mention is made that the owner of the subject lot attempted to sell to an objecting neighbor three years before.
As to the sixth finding  failure to overcome the negative and meet the affirmative criteria  it is partly a reiteration of the fourth finding, because that finding was concerned with the negative criteria. The affirmative criteria were established *464 by the very need for a variance, i.e., the fact that the lot in question was undersized without fault of its owner, and no adjacent land was available for acquisition.
As to the seventh finding  that serious drainage problems exist to the rear of the property and no expert testimony was presented  the proposed builder, DePasqual (for plaintiff), testified as to how the drainage problem would be resolved.
As to the eighth finding  that no 25-foot lots exist anywhere on McKeon Street  as stated, there was evidence that one did exist on New Brunswick Avenue, right around the corner. McKeon Street is about four blocks long. Near the lot it is intersected by New Brunswick Avenue, a main artery of traffic.
The facts of Harrington Glen, Inc. v. Leonia Bd. of Adj., 52 N.J. 22 (1968), are so similar to those of the case at bar that the principles articulated therein should have influenced the majority to decide differently. Harrington Glen came before our Supreme Court on a record of a denial by the zoning board of a variance with respect to an undersized lot in a residential zone. The Law Division reversed the zoning board. The Appellate Division reversed the Law Division. The Supreme Court granted certification, 49 N.J. 369 (1967). As in the instant case, the lot was under contract to be sold to plaintiff therein, who sought the variance. It had a frontage of 40 feet and an area of 4,880 square feet. The zoning ordinance required a frontage of 80 feet and an area of 8,000 square feet. The lot had been owned by the contracting seller when the restrictive ordinance was adopted. There was no available contiguous land for sale except a piece of land which would, if it could be acquired, add about 2,400 square feet and still leave the combined premises undersized. There, as here, the lot would be useless unless it could be built upon. Neighbors voiced objections, saying it would adversely affect their properties and the character of the area. Each lot across the street from the one involved required a 50-foot frontage; none had less than 80 feet. No *465 lot had less than an 80-foot frontage on the same side as the lot for which the variance was sought.
As in the case at bar, the resolution denying the variance contained no specific factual findings with respect to the criteria set out in N.J.S.A. 40:55-39(e). As noted in the opinion:
* * * It [the resolution denying the variance] says only that no satisfactory evidence was introduced showing sufficient hardship to justify grant of a side-yard variance or "a variance to construct a dwelling on the property in question." It concludes by declaring that the variance "could not be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zoning plan and ordinance." [52 N.J. at 27-28]
The court held that the denial of a variance on a finding couched in the conclusory language of the statute was not adequate. It further held that there must be a statement of the specific findings underlying the determination that the statutory criteria for a variance were not satisfied. Unless such findings are recited, the court said, a reviewing court cannot determine fairly whether the board acted properly and within the limits of its authority in refusing a variance.
The court remanded the matter to the board of adjustment
* * * for a review of the record, a reconsideration of the evidence, and if denial of the variance is reaffirmed, for a full and complete statement of the factual findings on which the denial is based. Such findings should have a clear N.J.S.A. 40:55-39c orientation. They should be made in the light of the affirmative and negative criteria specified both in subsection c and in the last paragraph of section 39. Particular consideration must be given to the factor of hardship to be suffered by the property owner. [at 28 emphasis supplied]
The court in Harrington Glen, supra, observed that under Wilson v. Mountainside, 42 N.J. 426, 452-453 (1964), when neither the owner of the lot at the time of the adoption of the zoning ordinance which made the lot undersized nor a subsequent owner did anything to create the condition for *466 which the variance is sought, a right to relief possessed by the original owner passes to the successor in title. It stated that such right is not lost simply because the succeeding owner bought or contracted to buy with knowledge of the lot-size restriction.
The following portions of the opinion are particularly apt:
There is a stern necessity in a case like this one for thorough evaluation of the facts and crystal clear findings with respect to the statutory requirements for a variance. The Board must have in mind that if it finds plaintiffs are not entitled to relief, the ordinance will have zoned their property into idleness. Denial of permission to build a home upon the lot deprives it of all productive or beneficial use. The only distinction between such zoning restriction and an actual taking by the municipality is that the restriction leaves the owner with the burden of paying taxes on the property, while the outright taking relieves him of that burden. Ordinarily restraint upon all practical use, such as that which would follow from denial of a variance, is spoken of in terms of confiscation. [Citations omitted]
In such cases, therefore, consideration of the utmost fairness must be given to an application for a variance. If upon such consideration the board of adjustment reasonably concludes that a variance can be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance, the relief sought naturally should be given. * * *

* * * * * * * *
* * * If there is no adjoining property available for purchase or available at a fair price, or if the undersized-lot owner does not have sufficient funds to buy additional land or feels that his building project does not warrant further expenditure, and a variance is denied, is there no remedy open to him? His property having been zoned into sterilty, must he accept that state and continue to pay taxes thereon ad infinitum? The questions project important issues which our remand makes unnecessary to decide now. Accordingly they are reserved. [52 N.J. 29-31]
Justice Francis also wrote the opinion in Gougeon v. Stone Harbor, supra, shortly after the Harrington Glen case. This case likewise involved an application for a 39(c) variance. Justice Francis stated that the square-foot area and side-yard requirements of the zoning ordinance, together with the *467 use restriction to one-family residences, had zoned plaintiff's property into idleness. There was no other lot available for plaintiff to acquire.
* * * Thus the hardship seems plain. Therefore, if sufficient evidence is presented at the new hearing to satisfy the negative criteria specified in the statute, in the absence of some unusual circumstance the right to a special exception or a variance would appear to exist. [52 N.J. at 220]
The court concluded in that case that, under the circumstances, if the overall proof at the rehearing before the zoning board satisfied the negative criteria of the statute, the hardship being established, the variance or exception should be granted, unless a binding offer was made on the record to pay plaintiff the fair market value of his lot. Finally, it was said:
If, on the other hand, the Board, on a stateemnt of adequate reasons accompanied by specific factual findings, refuses the * * * variance, declaring that the negative criteria have not been met, another situation will present itself. In that event, if the * * * variance is denied, a substantial question will arise as to whether the ordinance as applied to plaintiff is arbitrary and unreasonable and amounts to an unconstitutional restriction on the use of his property. Compare Harrington Glen, Inc. v. Board of Adjust., Leonia, supra. That problem cannot be decided now. If it arises it will have to be presented to us on a record containing the full facts as developed at the rehearing. [at 225-226]
The matter was remanded to the zoning board, as was done in Harrington Glen.
A.M.G. Associates v. Springfield Tp., 65 N.J. 101 (1974), involved a split-lot situation. The applicable zoning ordinance limited the front portion of the lot in question to a business use and the rear portion of the lot to a residence use. The residentially-zoned portion of the lot was so small that, even were a variance from the zoning requirements granted, the segment could not practically accommodate an acceptable dwelling.
*468 The township committee rejected the recommendation of the zoning board which would have permitted the use of the rear portion of the lot for a business use upon certain conditions. On review by the trial court in an in lieu action, it was held that the ordinance was invalid in its application to the rear of the premises. Sub nom. Grate v. Springfield Tp., 117 N.J. Super. 130 (Law Div. 1971). The Appellate Division disagreed and reversed. In doing so it relied on Visco v. Plainfield, 136 N.J.L. 659 (Sup. Ct. 1948), which under somewhat similar facts held that the burden cast on the relatively small portion to the rear was purely incidental to the exercise of the zoning authority and offset by resulting advantages, and thus the owner suffered no relievable hardship.
The Supreme Court reversed and remanded with directions that parking be permitted on the residential portion as an accessory use to the business sector. In addition to overruling Visco v. Plainfield, supra, to the extent that it stood for the broad proposition that the residential segment of the lot could be zoned into uselessness, the court, per Mr. Justice Hall, said:
* * * We rather hold to the view that, in the split lot situation, an owner cannot validly be deprived of all reasonable utilization, for the benefit of another private landowner, of that portion of his land (beyond a de minimis situation) which otherwise, by reason of inability to meet the requirements of the zone in which it is situate, is practically unusable, yet remains subject to the burden of taxation. This conclusion stems from the landmark case of Nectow v. Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928), and follows the many cases in this court holding that the zoning of property into idleness by restraint against all reasonable use is invalid as confiscatory and amounting to a taking without compensation. See e.g., Kozesnik v. Montgomery Township, 24 N.J. 154, 182 (1957); Morris County Land Improvement Company v. Parsippany-Troy Hills Township, 40 N.J. 539, 554-557 (1963); Harrington Glen, Inc. v. Municipal Board of Adjustment of the Borough of Leonia, 52 N.J. 22, 29 (1968).[4] [Footnote omitted]
The view just expressed is in accord with the best considered decisions elsewhere. Representative cases include Lapenas v. Zoning Board of Appeals of Brockton, 352 Mass. 530, 226 N.E. 2d 361 *469 (1967); Spanich v. City of Livonia, 355 Mich. 252, 94 N.W. 2d 62 (1959); City of Omaha v. Cutchall, 173 Neb. 452, 114 N.W.2d 6 (1962); Baronoff v. Zoning Board of Adjustment, 385 Pa. 110, 122 A.2d 65 (1956); cf. North Shore Steak House, Inc. v. Board of Appeals of the Incorporated Village of Thomaston, 30 N.Y.2d 238, 331 N.Y.S.2d 645, 282 N.E.2d 606 (1972). See generally, 1 Anderson, American Law of Zoning, § 8.12, Split lots (1968).

* * * * * * * *
However, that does not end this case. While some reasonable use of the residentially zoned portion must be permitted, whether the relief is granted by way of variance or, as here, by constitutional attack, the question remains as to the nature and extent of the use to be allowed in such situations. * * * [65 N.J. at 111-113]
Of course, it is settled law that a zoning board has full power to grant a variance upon appropriate conditions. Cohen v. Fair Lawn, 85 N.J. Super. 234, 237-238 (App. Div. 1964); Yahnel v. Jamesburg Bd. of Adj., 76 N.J. Super. 546, 552 (Law Div. 1962), aff'd 79 N.J. Super. 509 (App. Div. 1963), certif. den. 41 N.J. 116 (1963); State v. Farmland-Fair Lawn Dairies, Inc., 70 N.J. Super. 19, 24 (App. Div. 1961), certif. den. 38 N.J. 301 (1962); Alperin v. Middletown Tp. Mayor & Tp. Comm., 91 N.J. Super. 190 (Ch. Div. 1966). The conditions may be reasonably related to reducing the impact of the use of the smaller lot upon the area in question. It does not appear that the grant of a variance subject to appropriate conditions was ever suggested in the instant case.
Article XVI, § 1(b), of the Perth Amboy zoning ordinance specifically provides with respect to undersized lots that if a lot was under one ownership at the date of the adoption of the ordinance, and the owners thereof own no adjoining land, it may be used as a lot for any purpose permitted in the zone provided all other regulations prescribed for the zone by the ordinance are complied with. Although neither the zoning board nor the trial judge passed on this section of the ordinance, because apparently it was not referred to by plaintiff, at the very least it constitutes an expression of intention to give special treatment to owners of undersized lots who qualify under the terms of that section.
*470 As shown, the effect of the zoning board's action was to zone an innocent owner's land into idleness without proper or legal findings. Moreover, I believe that the principles set forth in such cases as Harrington Glen, Gougeon and A.M.G., all supra, show that our Supreme Court insists upon legal and sympathetic treatment in cases like the one at bar. This treatment was not accorded plaintiff.
For these reasons I am of the opinion that there should be a remand to the zoning board for the purposes of (1) making full findings of fact; (2) giving a statement of what their view discloses, in the event that they intend to rely on a view in arriving at their ultimate conclusion; (3) further exploration of the possible sale of the lot for its reasonable value; (4) setting forth the bases of their findings with respect to the affirmative or negative criteria, and (5) a determination as to whether a variance should be granted upon conditions.