*241
 
 Burke, J.
 

 In this article 78 proceeding, appellant North Shore Steak House, Inc. (hereafter North Shore) seeks to review a decision of the Board of Appeals of the Village of Thomaston (hereafter the Board) denying North Shore’s application for: (1) a special exception permit to extend its parking area, on its split zoned lot, 25 feet into a single-family residence district, and (2) a hardship variance permitting accessory parking on the residentially zoned property beyond the 25-foot strip.
 

 North Shore is the lessee of a plot of land used for a restaurant on the northwest corner of Northern Boulevard and Summer Street, in the Village of Thomaston in Great Neck, Long Island. The lease term is from May 1, 1961 to February 28, 2003. The premises front 181 feet on Northern Boulevard, a heavily traveled State highway, and have a depth of 286 feet along Summer Street. The zoning map provides that the Business “ B ” District has a depth of 200 feet and, therefore, the lot is split zoned, the rear 86 feet being in Residence “ B ” District zoned for single-family homes. The plot has been in single and separate ownership since 1903 and is improved with a main building, used as a restaurant since 1940, and an old stable, in the back of the premises, approximately 5 feet from the rear line.
 

 All available space within the 200 feet business district has been blacktopped for parking during the past nine years. North Shore has made two small extensions to the main building which did not increase the seating capacity but did result in the loss
 
 *242
 
 of several parking spaces. The restaurant has seats for 170 people at the tables and an additional 18 at the bar. At present, there are parking spaces for 75 to 85 cars.
 

 In December, 1969, North Shore, joined by the owner-lessor, Herman Weinman, made an application for a special exception permit, pursuant to article X (§ 3) of the Zoning Ordinance, which states:
 

 “
 
 Section 3. They
 
 may
 
 in appropriate cases, after public notice and hearing, and subject to appropriate conditions and safeguards, and in harmony with the general purpose and intent of this ordinance, in addition to the powers and duties set forth in the Village Law of the State of New York and such powers as are heretofore in this ordinance given to them:
 

 “ (e) Where a zone boundary line divides a lot in single ownership at the effective date of this ordinance affecting a use district, as the case may be, permit a use authorized on either portion of such lot to extend to the entire lot, but not more than twenty-five (25) feet beyond the boundary line of the greater restricted zone.” (emphasis supplied).
 

 In addition, the application sought a variance for the balance of the rear 86 feet beyond the 25-foot strip, except for a 50-foot by 100-foot plot on the northeast corner, to be improved with a new one-family house fronting on Summer Street.
 

 In rejecting the application for a variance, the Board found, among others, that (1) the premises were not unique or different from other split zoned property in the village (2) that the hardship, if any, was self-created (3) that the evidence that the variance would have an adverse effect on the adjoining property was not rebutted and (4) that a ratio of one car to every three or four seats is all that should be reasonably required. Based on these findings, the Board also concluded, without any additional findings or conditions, that the special exceptions permit ‘
 
 ‘
 
 would not be in harmony with the general purpose and intent of the zoning plan and scheme ”.
 

 Special Term, in sustaining the Board’s determination, did so, not on the merits, but on the basis that a prior application by the owner-lessor in 1957 was
 
 res judicata
 
 in the absence of “ changed circumstances ”. The majority in the Appellate Division did not rely on this rationale but concluded that the record did not support the view that the residential portion of the
 
 *243
 
 property could not be used for that purpose. In addition, citing
 
 Matter of Lemir Realty Corp.
 
 v.
 
 Larkin
 
 (11 N Y 2d 20), it held there was a reasonable basis for the denial of the special exception permit.
 

 In his dissent, Justice Gulotta agreed with the majority with respect to the denial of the variance but determined that the denial of the special exception permit was arbitrary and capricious since the Board
 
 “
 
 erroneously applied the same test to the special exception application ” as that required for a hardship variance.
 

 On this record, it cannot be said that the hardship variance was improperly denied. It was sought for accessory parking on the northwest corner of the property (measuring approximately 61 feet by 81 feet) beyond the 25-foot special exception area and next to the 50-foot by 100-foot plot on the northeast corner on which the owner-lessor planned to erect a new, conforming one-family house fronting on Summer Street. North Shore’s contention, no doubt true, that this plot is more valuable as accessory parking is insufficient to warrant a hardship variance since the property, located in a residential zone, may be reasonably employed for that use as evidenced by the proposed new house on the adjoining parcel
 
 (Matter of Otto
 
 v.
 
 Steinhilber,
 
 282 N. Y. 71;
 
 Matter of Crossroads Recreation
 
 v.
 
 Broz,
 
 4 N Y 2d 39, 46;
 
 Matter of Forrest
 
 v.
 
 Evershed,
 
 7 N Y 2d 256).
 

 The denial of the special exception permit, based on factual findings used to support denial of the variance, ignores the fundamental difference between a variance and a special exception permit. A variance is an authority to a property owner to use property in a manner forbidden by the ordinance while a special exception allows the property owner to put his property to a use expressly permitted by the ordinance. The inclusion of the permitted use in the ordinance is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood (2 Rathkopf, Law of Zoning and Planning, Oh. 54, pp. 54-3 — 54—4;
 
 Matter of Reed
 
 v.
 
 Board of Stds. & Appeals,
 
 255 N. Y. 126;
 
 Matter of Syosset Holding Corp.
 
 v.
 
 Schlimm,
 
 4 A D 2d 766;
 
 Matter of Bar Harbour Shopping Center
 
 v.
 
 Andrews,
 
 23 Misc 2d 894). Denial of the permit on the ground that the extension of the parking lot 25 feet into the residential
 
 *244
 
 zone is ‘ ‘ not * * * in harmony with the general purpose and intent of the zoning plan” is, thus, patently inconsistent. (See, generally, 3 Anderson, American Law of Zoning, § 15.13.)
 

 The burden of proof on an applicant for a special exception permit is much lighter than that required for a hardship variance
 
 (Verona
 
 v.
 
 West Caldwell,
 
 49 N. J. 274; Anderson,
 
 op. cit, supra,
 
 § 15.21). It does not require the applicant to show that it has been denied any reasonable use of the property but only that the use is contemplated by the ordinance subject only to “conditions” attached to its use to minimize its impact on the surrounding area. North Shore has met that burden. The president of North Shore testified that 22 parking spaces are needed for employees’ cars. Despite the employment of parking attendants at all times, a severe shortage of parking space exists at peak dining periods on weekends. A 25-foot by 81-foot extension would accommodate approximately 25 to 30 more cars. Because of congestion in the parking lot, cars tend to back up on Summer Street waiting to get into the parking area. This problem is further aggravated by the fact that a median was installed on Northern Boulevard three years ago preventing traffic traveling eastward from turning left into the driveway on Northern Boulevard. Instead, the traffic must proceed to Summer Street and make a left turn, adding to the congestion there.
 

 The Board’s expert, Mr. Reuter, conceded that North Shore had a parking problem and the restaurant needs 100 parking spaces. He admitted that there was an adjacent water tower, 80 feet to 100 feet tall, but declined to estimate the impact of the tower on residential values. In addition, he admitted that Briggs Auto Leasing had been issued a permit to extend a large parking area beyond the 200-foot business district on a plot less than two blocks from the restaurant and that the Methodist Church fronting on Northern Boulevard in the vicinity had parking well beyond the 200-foot line without harm to anyone. He, nonetheless, concluded that granting the permit would adversely affect property values and generate more traffic on Northern Boulevard.
 

 In view of the changes which have already taken place in the immediate area, there is no basis for the conclusion that the addition of parking spaces for 25 or 30 cars, to be used primarily
 
 *245
 
 on weekends, will adversely affect property values or greatly increase traffic in the area
 
 (Matter of Young Men’s Christian Assn.
 
 v.
 
 Burns,
 
 13 A D 2d 1009, 1010). On the contrary, the uncontroverted evidence is that granting of the permit will have a beneficial impact by relieving traffic on Summer Street during peak dining hours while preventing any spillback onto heavily traveled Northern Boulevard by cars traveling eastward and unable to enter the front entrance of the parking lot
 
 (Oursler
 
 v.
 
 Board of Zoning Appeals,
 
 204 Md. 397). Nor does there appear to be any Reasonable basis for the conclusion that the additional cars will increase noise or gas fumes in the immediate area, since North Shore has agreed to provide a 10-foot screen of shrubs or trees at the rear of the extension to protect the neighboring residences. Absent any support in the record for the conclusions advanced by the Board justifying the denial, and in view of ‘ ‘ erroneous standard ’ ’ used, namely that applicable to a hardship variance, the decision of the Board with respect to the special permit, must be deemed arbitrary and capricious (67 N. Y. Jur., Zoning and Planning Laws, § 340;
 
 Matter of Lemir Realty Corp.
 
 v.
 
 Larkin,
 
 11 N Y 2d, at p. 25).
 

 The argument, relied on by Special Term, that a prior application was
 
 res judicata
 
 is not applicable. In 1957 the present owner made an application for a use variance as well as a special exception permit for accessory parking in the residential zone. The application was denied and the denial sustained by Special Term. The denial was apparently on the basis that the additional parking was available on the 200-foot business zone despite the owner’s reluctance to disturb the lawn and trees then present. Since then substantial changes have occurred. The 200-foot business zone has been completely blacktopped for parking; Northern Boulevard, a State highway, has been widened eliminating on-street parking, previously permitted, as well as adding a median strip making it impossible for eastbound traffic to enter the parking lot from the front entrance. Substantial changes have also occurred in neighboring parcels in which parking has been extended into the residential area from the business zone.
 

 In sum, North Shore has advanced sufficient proof of compliance with the ordinance justifying issuance of the special permit by the Board. The testimony of North Shore is virtually
 
 *246
 
 uncontroverted. As a result it would appear there is no room for the exercise of discretion on the part of the Board and no purpose would be, served by remanding the matter for further hearings.
 

 Accordingly the order of the Appellate Division should be modified to the extent of reversing the denial of the special exception permit and directing the Board to issue the permit subject to any reasonable conditions it deems appropriate and the remainder of the order insofar as it denied the application for a use variance should be affirmed.
 

 Chief Judge Fuld and Judges Scileppi, Bergan, Breitel, Jasen and Gibson concur.
 

 Ordered accordingly.