■ In the Matter of Martin B. Biener, Appellant, v Incorporated Village of Thomaston et al., Respondents. — In a proceeding, *inter alia,* pursuant to CPLR article 78, to review a determination of the respondent Board of Appeals of the Village of Thomaston, dated August 27, 1980, the petitioner appeals from so much of a judgment of the Supreme Court, Nassau County (Pantano, J.), dated March 24, 1981, as dismissed the petition insofar as it sought article 78 relief. Judgment reversed insofar as appealed from, without costs or disbursements, petition granted to the extent that the determination is annulled and the Board of Appeals is directed to issue to petitioner the special use permits in question subject to any reasonable conditions it deems appropriate. The petitioner, Martin Biener, is the owner of a car dealership which covers several parcels of land on Northern Boulevard in the Village of Thomaston, Town of Great Neck, Nassau County. In 1969 Biener purchased parcels designated as Lot Nos. 522 and 523. He then applied to the board of trustees of the village for a permit to demolish an existing bar and grill and transient hotel and to install a sale office (trailer) together with the paving, lighting, signs, and fences necessary to conduct a used car sales operation. At that time all of Lot No. 523 and the greater part of Lot No. 522, to a depth of 200 feet from the northerly line of Northern Boulevard, were zoned Business B and were governed by article 7-A of the village zoning ordinance, section 2 of which provided that Business B property could be used for public garages or car dealerships. On February 9, 1970 the application was granted. In addition, the

village zoning ordinance was amended which had the effect of removing the portion of Lot No. 522 which was in the Residence B District and to reclassify it as Business B. In July, 1971 Biener acquired Lot No. 7, which adjoined Lot Nos. 522 and 523 on the east. In September, 1971 Biener acquired Lot No. 13. Both of the newly acquired lots were for the most part located in the Business B District. On March 27, 1972 Biener applied to the village for a building permit for the purpose of altering the stores on Lot No. 7 and converting them into an automobile sales showroom and service area. The village refused to issue the permit. However, Biener brought an action to compel the issuance of the permit. By judgment of the Supreme Court, Nassau County (Meyer, J.), dated July 21, 1972, the village was directed to issue the permit. Whereupon, on August 18, 1972, the permit was issued, and the showroom and service facility were erected. On August 14, 1972 the village repealed the provisions of article 7-A of the zoning ordinance dealing with the Business B District and adopted a new article 7-A which reclassified the Business B District as the Office Building District. Thus, under the new zoning ordinance, property could be only used essentially for office buildings, banks, and restaurants. By virtue of the new ordinance, Biener's use of Lot Nos. 522, 523, 7 and 13 became an existing, nonconforming use. Subsequently, in June, 1976, Biener acquired Lot Nos. 8, 9 and 503, all of which adjoined Lot No. 7 to the east. Except for a portion of Lot No. 503, which was in the Residence B District, all were located in the Office Building District, and were being utilized for the nonconforming use of a bar and grill. Biener continued the legal, nonconforming use of the structures on those lots, combining them with his automobile dealership, and utilizing them as a leasing office. Thereafter, Biener continued the use of the premises for the various different nonconforming uses mentioned above. On March 7, 1980 Biener applied to the board of appeals for a special permit under article 10 (§ 3, subd [f]) of the village's zoning ordinance. He sought an extension of the nonconforming use on Lot No. 7, and its accessory uses, to all the lots, and also sought use and area variances of the Office Building District regulations. Thus, he sought the following: (1) To permit the operation of a new car dealership; (2) To reduce front yard setbacks; (3) To change the location of required screening and boundary wall; and (4) To eliminate a required side yard. A use variance was also sought to permit accessory parking in the Residence C portion of Biener's property. Hearings were held following which the board of appeals denied the application in a decision, dated August 27, 1980. In essence, the board determined that it did not have the authority to grant the requested relief because to do so would be tantamount to changing the zoning ordinance, something that only the local legislative body could do. Thereafter, on September 25, 1980, the instant article 78 proceeding was commenced. Special Term, in essence agreed with the board of appeals, finding that the extension of the nonconforming use beyond Lot No. 7 would contravene the zoning ordinance. On this appeal the petitioner maintains that both the board and Special Term ignored the legal nonconforming status of Lot Nos. 8, 9 and 503, to which he asserts he succeeded upon acquisition thereof. In addition, petitioner contends that the board erroneously applied the standard applicable to applications for a use variance instead of that for a special use permit, which is what he seeks. Both the board and Special Term misconstrued the application of the zoning ordinance. We agree with the petitioner that they erroneously concluded that the nonconforming use could only be applied to Lot. No. 7. As the petitioner rightly points out, Lot Nos. 8, 9 and 503 had a pre-existing, nonconforming use at the time of the change in the zoning ordinance in 1972 from Business B to Office Building. Article 9 (§ 1, subd [f]) of the zoning ordinance provides: "Whenever a district shall hereafter be changed any then existing nonconforming use therein may be continued or changed to

use of a similar or higher classification provided all other regulations governing the new use are complied with." When Biener purchased Lot Nos. 8, 9 and 503 in 1976, the nonconforming uses existing thereon could be continued or changed to a use of a similar or higher classification. Since nonconforming uses existed on these lots, too, it was error for the board and Special Term to conclude that the proposed plans called for an extension of the building on Lot No. 7 to those other lots, based on the assumption that the only nonconforming use was on Lot No. 7. The fact that the petitioner purchased these lots subsequent to the amendment to the zoning ordinance is irrelevant. It is well settled that a change in the ownership of a nonconforming business or structure does not affect the right to continue the use and that a purchaser of land developed prior to the enactment of an ordinance is entitled to continue its use, although it does not conform to the zoning ordinance (see *Matter of Bexson v Board of Zoning & Appeals of Town of Hempstead,* 28 AD2d 848, affd 21 NY2d 961; see, also, 67 NY Jur, Zoning and Planning Law, § 97). Furthermore, Special Term confused article 9 of the zoning ordinance with article 10 when it stated that article 9 (§ 1, subd [a]) does not permit a nonconforming use to be changed to a larger building. Article 9 refers to changes as of right, while article 10, which applies here, concerns applications for special use permits to the board of appeals wherein there must be notice and a public hearing. Article 10 (§ 3, subd [f]) specifically "[p]ermit[s] the extension of a nonconforming use of a building upon the lot occupied by such use of building". In other words, upon a proper showing, the board is empowered to grant nonconforming enlargements of an existing, nonconforming building upon a given lot. In essence then, the board is empowered to permit an extension of the structures upon Lot Nos. 7, 8, 9 and 503. As for Lot Nos. 522 and 523, the petitioner rightly points out that these lots also enjoyed a legal nonconforming status prior to the enactment of the new ordinance. When the 1972 judgment of Justice Meyer authorized the use of Lot No. 7 as an automobile showroom and service facility, adjoining Lot Nos. 522 and 523 became accessory to it as offstreet parking, pursuant to section 9 of article 7-A of the zoning ordinance, which provides: "There shall be provided on each lot or premises off street parking facilities for vehicles, which shall be not less than a minimum of two square feet of parking for each square foot of commercial space in the building." Having determined that the board was empowered to grant the special permit requested, we turn now to the merits of the application. The board applied an erroneous standard of proof in making its determination. In essence, the board treated the application as one for a use-variance for all of the lots other than Lot No. 7, and applied the standards applicable thereto. In misconstruing the zoning ordinance as discussed heretofore, the board went on to find that the granting of a variance would be tantamount to a change of the zone. Rather, the board should have employed the standards applicable to the granting of a special permit. In *Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston* (30 NY2d 238, 243-244), the Court of Appeals had the same issue before it, and wrote: "A variance is an authority to a property owner to use property in a manner forbidden by the ordinance while a special exception allows the property owner to put his property to a use expressly permitted by the ordinance. The inclusion of the permitted use in the ordinance is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood [citations omitted] * * * The burden of proof on an applicant for a special exception permit is much lighter than that required for a hardship variance [citations omitted]. It does not require the applicant to show that it has been denied any reasonable use of the property but only that the use is

contemplated by the ordinance subject only to 'conditions' attached to its use to minimize its impact on the surrounding area." Since the application herein is actually for a special use permit, we must apply the standards applicable thereto. The petitioner produced three experts who testified that the proposed plans for the site would enhance the area and be in keeping with the spirit and purpose of the zoning ordinance. Also, one of the experts testified that the entire zone had had no office building construction on it since the enactment of the new ordinance and that there would be none in the foreseeable future due to various factors. The village's experts, on the other hand, did not refute this testimony but merely testified largely as to the economic feasibility of constructing an office building on the site. Accordingly, we hold that, on this record, the petitioner has met his burden of demonstrating that the use is contemplated by the ordinance subject to any conditions which the board may deem necessary to minimize its impact on the surrounding area. Rabin, J. P., Margett, O'Connor and Thompson, JJ., concur.