■ In the Matter of NORTH RIDGE ENTERPRISES, INC., Respondent, v TOWN OF WESTFIELD et al., Appellants. — Judgment unanimously reversed, determination confirmed, and petition dismissed, without costs. Memorandum: It was an abuse of discretion for Special Term to annul the determination of the Town Board (Board) denying a special use permit to petitioner North Ridge Enterprises, Inc. (North Ridge) and to direct issuance of the permits. North Ridge applied for a special use permit for a 100-acre parcel situated in a Residential-Agricultural (R-A) District in the Town of Westfield. The proposed use was described as a "Recreational Resort & Lounge with golfing, cross-country skiing, hiking & snowmobile trails. Building to be used as a Pro Shop, Club House and a Lounge with entertainment in which food and beverages will be available." Such use is not one of the permitted principal uses in an R-A District; however, "commercial recreation" is one of the enumerated uses for which a special use permit may be obtained. A "commmercial recreation area" is defined as "[a]ny area providing recreational activities, facilities, or services for a fee." While a restaurant/lounge is not one of the specifically listed accessory uses, the ordinance provides generally for "[o]ther customary uses" and the Board acknowledged that a bar and restaurant would be allowed as an accessory use to a commercial recreation operation. A hearing was held on November 20, 1980, at which a number of neighboring property owners expressed their opposition to issuance of the special use permit. A special meeting of the Board was called later that evening and the Board resolved to postpone decision on the application until North Ridge supplied "specific plans on the ski trails, golf course, and other recreational activities, and a timetable for their development, as well as more complete information as to the type of restaurant to be run." North Ridge responded by letter dated November 26, 1980 in which it informed the Board (1) that a four-kilometer cross-country ski course was to be completed by June 1, 1981 and would be well within the property boundaries; (2) that construction of a nine-hole golf course would commence by June 1, 1981 and would be completed on May 1, 1983; (3) that it was willing to fence or post any boundary at the request of a neighbor; (4) that it would clean up the driveway and appurtenant areas once a week or additionally as required; (5) that immediately upon opening it would operate a New York style delicatessen with hours of operation from 11:00 A.M. to 2:00 A.M., Wednesday through Sunday; (6) that it would immediately be available to accommodate banquets, although initially food for those affairs would be catered; (7) that immediately upon obtaining the permit it would open a lounge operating on the same schedule as the delicatessen with a maximum occupancy of 450 persons and with entertainment in the form of tapes or live "Top 40" music. The Board met on December 4, 1980 and counsel for North Ridge requested that the application be approved promptly so that petitioner could open the bar and lounge in order to meet financial commitments. Counsel for neighboring land owners voiced concern that North Ridge was simply trying to open a bar in an R-A District. The Town Supervisor requested the attorneys to draw up a compromise solution and the meeting was recessed until December 11, 1980. An agreement was reached between counsel as to certain conditions on the operation. However, when the legality of one of the conditions was raised, i.e., that the Board would have control over the liquor license, the

agreement failed. The Board rejected the application upon finding that the proposal was actually for a full-fledged bar with a limited restaurant and a small recreational operation as an accessory use. Additionally, the Board found that operation of the bar would attract large groups of people, would increase traffic, noise and litter, would not be in harmony with the existing area and would devalue the neighboring properties. North Ridge then commenced the instant proceeding alleging a number of grounds for annulling the Board's determination. The burden of proof on application for a special use permit is much less than that for a variance. Where, as here, the zoning ordinance authorizes a use permit subject to administrative approval, the applicant need only show that the use is contemplated by the ordinance and that it complies with the conditions imposed to minimize anticipated impact on the surrounding area (*Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston,* 30 NY2d 238, 243-244; *Matter of Carrol's Dev. Corp. v Gibson,* 73 AD2d 1050, 1051, affd 53 NY2d 813). The Town Board is required to grant a special use permit unless it has reasonable grounds for denying the application (*Matter of Carrol's Dev. Corp. v Gibson, supra*). The record in this case demonstrates reasonable grounds for denial. First, the record supports the Board's finding that the principal use would be as a bar with the proposed recreational facilities as an accessory use. Second, the special use would be subject to the standards enunciated in section 10-04 of article X of the ordinance, which provides in relevant part: "The Town Board shall take into account and make findings concerning the location and size of the use [and] the nature and intensity of the operations involved * * * in order to lessen congestion in the streets * * * to promote health and general welfare * * * to maintain the value of property in the Town and to maintain or improve the essential character of the neighborhood. Operations in connection with any special use shall not be more objectionable to nearby properties by reason of noise * * * than .would be the operation of any specifically permitted use." (See, also, 2 Anderson, New York Zoning Law and Practice [2d ed], §§ 19.16, 19.18, 19.20.) The Board's finding that operation of the bar would not comply with those standards is reasonable. Where the record supports a board's determination that the standards have not been met, the court should not interfere with that determination absent clear illegality (*Matter of Lemir Realty Corp. v Larkin,* 11 NY2d 20, 25; *Brick Hill Constr. Corp. v Zoning Bd. of Appeals of Town of Somers,* 74 AD2d 810, affd 53 NY2d 621). Petitioner's other contentions require only brief comment. At Special Term petitioner urged that it was entitled to the permit as a continuation of a prior nonconforming use (see *Matter of Biener v Incorporated Vil. of Thomaston,* 85 AD2d 730). However, petitioner did not assert that claim before the Board and may not raise it for the first time before the court in a CPLR article 78 proceeding (see *Matter of Yonkers Gardens Co. v State of New York Div. of Housing & Community Renewal,* 51 NY2d 966, 967). In any event, the evidence submitted demonstrates that the prior nonconforming use had been abandoned or discontinued. Nor did the Board renege on any assurance to petitioner that the permit would be issued. The fact that the Town Supervisor requested that the attorneys for petitioner and the neighboring property owners try to work out a solution is not an assurance that the permit would issue. Only the Board may approve the permit and in doing so it is bound to operate within the confines of the ordinance, not the agreement of adversaries (see 2 Anderson, New York Zoning Law and Practice [2d ed], § 19.14, p 109). Finally, Special Term did not resolve petitioner's challenges to the constitutionality of the ordinance. Those claims are not the proper subject of the instant proceeding and conversion to the appropriate form of action is unnecessary since upon the record they are

lacking in merit. (Appeal from judgment of Supreme Court, Chautauqua County, Cass, J. — art 78.) Present — Simons, J. P., Hancock, Jr., Doerr, Denman and Schnepp, JJ.