■ In the Matter of ROBERT LEE REALTY Co., Respondent, v VILLAGE OF SPRING VALLEY, Appellant. — In a proceeding pursuant to CPLR article 78 to review a determination of the Village Board of the Village of Spring Valley denying an application for a special use permit, the appeal is from a judgment of the Supreme Court, Rockland County (Cerrato, J.), dated September 30, 1981, which granted the petition, annulled the determination and directed the appellant to issue the permit. Judgment affirmed, with costs. No opinion. Weinstein, Thompson and Rubin, JJ., concur.

Gibbons, J. P., dissents and votes to reverse the judgment appealed from, confirm the determination and dismiss the proceeding on the merits, with the following memorandum: The petitioner, a partnership, is the owner of a commercial shopping center located at the intersection of Kennedy Boulevard and Route 59 in the Village of Spring Valley. On or about October 1, 1980, a supermarket located in the shopping center was destroyed by fire. Rather than restore the building to its former use, petitioner decided to build a structure containing several retail stores and three mini theaters. In April, 1981, petitioner submitted to the Village Board of the Village of Spring Valley an application for a special use permit pursuant to section 417 of the Spring Valley zoning ordinance. On July 7, 1981, a public hearing was held before the board. At the close of the hearing, the board unanimously voted to deny the application for a special use permit, setting forth various reasons primarily involving increased traffic congestion. It is not clear whether that determination, while made on the record at the meeting, was ever reduced to a written decision. Nonetheless, by order to show cause dated August 4, 1981, this proceeding was commenced. In its verified answer, the Village of Spring Valley asserted, as an affirmative defense, the reasons the board denied petitioner's application as follows: "TENTH: That the Village Board may recommend the issuance of a special permit pursuant to section 418.04 of the Zoning Code of the Village of Spring Valley * * * provided, it shall find that all of the following conditions and standards have been met in Section 418.04, Subdivisions (a) through (d). ELEVENTH: That the petitioner fails to meet the qualifications of Section 418.04 (a), in that, the nature of the use, times of operation and nature of ingress are such that considerable congestion, noise and safety problems will be created and will result in disharmony in the orderly development of the area in which it is located. TWELFTH: That the petitioner fails to meet the qualification of Section 418.04 (c), in that, the intended use will be objectionable, in that, it will create at exact times increased volume of noise and emission of fumes from vehicles for this use, than would be a use not requiring a special permit. THIRTEENTH: That the petitioner fails to meet the qualifications of Section 418.04 (d), in that the proposed use will require parking far in excess of a non special permit use, since the intended use adheres to exact time schedules requiring space for those currently enjoying

the proposed use and those waiting admission. That the proposed use with exact time schedules will conflict violently with parking for other commercial operations in the area causing safety problems in egress and ingress as well as questions of safety for vehicular traffic on the adjacent roads." In its short-form decision and judgment, dated September 30, 1981, Special Term granted the petition, finding that "the [Village's] denial of petitioner's application for a special-permit was arbitrary and unreasonable and not based upon factual evidence", I disagree and submit that the board's determination should not have been annulled. It is, of course, true that "[t]he inclusion of the permitted use in the zoning ordinance is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood" (*Matter of North Shore Steak House v Board of Appeals,* 30 NY2d 238, 243). Thus, a special use permit may not be denied solely on general objection to the special use or on conclusory findings that the proposed use is, per se, undesirable (*Matter of Pleasant Val. Home Constr. v Van Wagner,* 41 NY2d 1028). "It does not follow, however, that requests for special exceptions must always be granted subject only to the imposition of reasonable conditions * * * The stated standards in the ordinance guiding the board's consideration of special exception applications condition availability of a special exception, and compliance with those standards must be shown before any exception can be secured" (*Matter of Tandem Holding Corp. v Board of Zoning Appeals,* 43 NY2d 801, 802; see *Matter of Wen & Liz Realty Corp. v Board of Zoning Appeals,* 94 AD2d 182). Furthermore, a board's decision with respect to a special permit application is discretionary and should not be overturned by the courts, absent clear illegality, arbitrariness or abuse of discretion (*Matter of Lemir Realty Corp. v Larkin,* 11 NY2d 20, 24). A record which rationally supports the conclusion that the projected use is not desirable under the criteria of the ordinance or that it is undesirable at that particular location, requires the upholding of the administrative determination (*Matter of Pleasant Val. Home Constr. v Van Wagner, supra*). The standards to be met in this case are set forth in section 418.04 of the Code of Ordinances of the Village of Spring Valley, as follows: "(418.04) Village Board Considerations and Scope. The village board, after public notice and hearing, may recommend the issuance of a special permit, provided that it shall find that all of the following general conditions and standards have been met: (418.04) (a) The location and size of the use, the nature and intensity of the operations involved in or conducted in connection with it, and the locations of the site with respect to streets giving access to it, are such that it will be in harmony with the appropriate and orderly development of the district in which it is located. (418.04) (b) The location, nature and height of buildings, walls and fences, and the nature and extent of the landscaping on the site are such that the use will not hinder or discourage the appropriate development and use of adjacent land and buildings. (418.04) (c) Operations in connection with any special use will not be more objectionable to nearby properties, by reason of noise, fumes, vibration or flashing of lights, than would be the operations of any permitted use not requiring a special permit. (418.04) (d) Parking areas will be of adequate size for the particular use, properly located and suitably screened from adjoining residential uses, and the entrance and exit drives shall be laid out so as to achieve maximum safety. The village board may recommend additional conditions and safeguards to the special permit as are necessary to assure continual conformance to all applicable standards and requirements." After examining the stated reasons for denying petitioner's application, which are found in the village's verified answer and are also contained in the record of the public hearing, it is clear that the board is alleging that petitioner has failed to meet the requirements of subdivisions (a), (c) and (d) of section 418.04

of the ordinance. In particular, reducing the board's findings to their essentials, the board turned down the application because it anticipated severe traffic congestion and problems incidental to that congestion, resulting from the operation of three theaters at this particular location. There is no question but that a significant increase in traffic congestion can serve as the basis for a board's decision not to grant a special use permit (*Matter of Tandem Holding Corp. v Board of Zoning Appeals,* 43 NY2d 801, *supra*). That being so, the issue here becomes whether the record reasonably supports the view that if the theaters were built, there would be such a traffic problem. The shopping center is located at the corner of Route 59 and Kennedy Drive. Route 59 is a major artery; Kennedy Drive is a two-way street with one lane in each direction. Spring Valley High School is located directly across from the shopping center, with its entrance on Kennedy Drive. The plan submitted to the board proposed that, to service the three theaters and the other businesses located in the shopping center, the parking lot would contain 338 parking spaces. Many persons spoke at the hearing, almost all in opposition to the theater project. Particularly germane was the statement made by Harry Baker, a traffic and transportation engineer who resides in the Village of Spring Valley. Mr. Baker stated that he had studied the traffic situation at and around the intersection of Route 59 and Kennedy Drive at various times of the day and night during a two-week period. He found that on a Saturday night, at about 9 P.M., even without the theaters, there were about 70 to 80 cars in the shopping center's parking lot, apparently owned by patrons of a restaurant and the stores then in operation. Remarking on the fact, supported by an official from the local school district, that the high school often has functions on weekend evenings after which cars exit the school parking lots into Kennedy Drive, Mr. Baker stated that, inevitably, there would be times when cars would "stack" up on Kennedy Drive and on the surrounding streets. He was particularly disturbed by the fact that Kennedy Drive would be used as the egress route by a great number of the theater patrons attempting to get onto Route 59, and yet the distance on Kennedy Drive from the corner of Route 59 to the furthest exit ramp of the shopping center is 360 feet, allowing for only 18 cars at a time. Petitioner alleges that any problem of traffic congestion will be obviated by staggering the showings at the three theaters. While that would certainly help the situation, it would still not be unexpected for 50 to 100 cars to attempt to leave the parking lot at the same time when one of the movies finished. Add to that the traffic involved with people arriving to patronize the theaters or other businesses in the center and add the possibility of a high school basketball game finishing at the same time, and you have the ingredients for gridlock. I submit that for a court to say that the board's fear of increased traffic congestion, resulting from locating three theaters at the site in question, is not a sufficient reason for its decision, is to usurp the power of the board (see *Matter of Lemir Realty Corp. v Larkin,* 11 NY2d 20, 25, *supra*). The finding that there would be a traffic problem is amply supported by the record, and therefore the judgment appealed from should be reversed and the proceeding dismissed on the merits.