In the Matter of EDWARD A. MAJOR et al., Respondents, v HERBERT N. COHEN et al., Constituting the Planning Commission of the City of Binghamton, Appellants, and WILLIAM O'BRIEN, Individually and as Chairman of the North Bank Neighborhood Association, et al., Intervenors-Appellants.

Third Department, March 12, 1987

APPEARANCES OF COUNSEL

*Grace, Hull & Vitanza, P. C. (Richard J. Grace* of counsel), for intervenors-appellants.

*Hinman, Howard & Kattell (N. Theodore Sommer* and *John R. Bedosky* of counsel), for respondents.

## OPINION OF THE COURT

LEVINE, J.

After purchasing a home on Avon Road in the City of Binghamton in 1984, petitioners, Edward A. Major (hereinafter Major) and his wife, applied to the City Planning Commis-

sion for a special use permit to conduct an accessory use on the property. Major is a psychiatrist with a mainly hospital-based practice. Petitioners sought permission for Major to conduct a part-time practice on the second floor of a four-car garage on the property limited to seeing individual patients for one hour each, between 3:00 P.M. and 5:00 P.M., four days a week. The property is located in what the City of Binghamton Zoning Ordinance designates as an R5-1 district primarily for one-family dwellings. The ordinance authorizes a home occupation, including that of a physician, to be conducted as an accessory use upon the granting of a special use permit by the Commission (City of Binghamton Zoning Ordinance § 202 [48]; § 501). No exterior alterations to petitioners' garage were planned. The house and garage are situated on a lot measuring 140 feet by 135.5 feet. There is a circular driveway in front of the house and a 140-foot by 36-foot parking area in front of the garage. The lot is bordered by a 10-foot-high wall to the rear, and trees and a six-foot fence and a six-foot embankment on the respective sidelines.

The ordinance (City of Binghamton Zoning Ordinance § 702 [2]) sets forth four conditions for the granting of a special use permit. These are (1) that "the proposed use, considering the nature and intensity" of its operations, will be "appropriate" in its location and "will have no material adverse effect on existing or prospective development permitted in the district"; (2) that the lot will be adequate in size for the use; (3) that the potential generation of traffic from the use will be within the capacity of access streets; and (4) that the use will be provided with adequate off-street parking and that the parking area will be properly screened from adjoining residential lots. After a hearing at which considerable neighborhood opposition to the granting of the permit was expressed, the Commission issued a decision denying petitioners' application on the ground that they had failed to satisfy the conditions for the granting of the permit except that pertaining to the adequacy of the lot size.

Petitioners then brought a CPLR article 78 proceeding challenging the Commission's denial of the application. Special Term annulled the determination and rendered a decision in which it set forth reasons for its conclusions that there was not substantial evidence to support the Commission's findings that the conditions, pertaining to the appropriateness or adverse effect of the use, traffic impact and parking requirements, were not met. The court remitted the case to the

Commission to make further findings on whether there were sufficient spaces on petitioners' property to meet the minimum off-street parking requirements of the ordinance and whether the Commission should exercise its discretion to require fewer parking spaces or to impose any other reasonable conditions on the issuance of the permit, in order to minimize the effect of the use upon the neighborhood. The court authorized the Commission to reopen the hearing for the purpose of considering additional evidence.

The Commission then conducted a further hearing, following which it again denied the application. The Commission identified two conditions of the ordinance which it found that petitioners failed to meet, namely, the appropriateness in and lack of adverse effect of the use on the neighborhood, and the adequacy of screening of the parking area, which the Commission construed to require a 10-foot buffer zone between it and adjoining properties. The instant article 78 proceeding was then commenced. Special Term again annulled and remitted to the Commission with the direction to issue the special use permit, subject to reasonable conditions except for the requirement of a buffer zone. The Commission then initiated this appeal. When the Commission subsequently chose not to perfect the appeal, the intervenors, representing residents of the neighborhood, were granted permission by this court to intervene and pursue the appeal.

■ The judgment should be affirmed. Neither of the two grounds the Commission cited for denying petitioners' application afforded a legally sufficient basis for its determination. Regarding the Commission's finding that the proposed use would be inappropriate in its location and would have a material adverse effect on existing development in the district, the evidence was uncontradicted of the totally minimal effect on the ambience of the neighborhood of this particular proposed conduct of a part-time psychiatric practice, consisting of seeing a maximum of three patients individually for one-hour sessions, four afternoons a week. There was no evidence that the use would have any visual impact on the specific area, nor that it would detract from neighboring property values. As Special Term observed in its initial decision, the result of this minor influx of people for psychiatric treatment sessions would be indistinguishable from the normal social visits to homes in the area or from professional visits to another physician in the immediate vicinity, whose office is located just over the line in another district where home occupations

are authorized without a special permit. The Commission made no contrary findings.

Instead, by restrictively identifying the affected area as a group of some 30 homes on Avon Road and an adjoining street, the Commission determined that permitting *any* home occupation in that area would endanger the purely single-family character of the neighborhood. In other words, the Commission did not find that this *particular* use, in the language of the ordinance, by reason of its "nature and intensity" (or indeed for any other specific reason), would be undesirable at the proposed location, but that home occupations in general would be undesirable in the diminutive enclave with which the Commission was concerned. This amounts to nothing more than a general objection to locating a particular activity in an area within a district zoned to permit such use. The inclusion of home occupations as a permitted use in the ordinance was the equivalent of a legislative finding that such uses, in general, are not out of harmony with the character of the neighborhood *(see, Matter of North Shore Steak House v Board of Appeals,* 30 NY2d 238, 243). This estopped the Commission from finding that the intrusion of any home occupation, no matter how innocuous, is undesirable *(see, Matter of Pleasant Val. Home Constr. v Van Wagner,* 41 NY2d 1028, 1029). This basis for the Commission's decision is thus "tantamount to finding that a [home occupation] is an undesirable use, which conclusion runs contrary to the zoning plan permitting such a use" *(Green v Lo Grande,* 96 AD2d 524, 525; *see, Matter of Peter Pan Games v Board of Estimate,* 67 AD2d 925, 926).

The second ground adopted by the Commission for denial of the permit was equally invalid. The legislative condition in question (City of Binghamton Zoning Ordinance § 702 [2] [d]) requires merely that the "parking area will be properly screened from any adjoining residential lots". Petitioners made a prima facie showing of compliance with that condition by the wall, fencing, shrubbery and embankment separating their lot from neighboring properties. Section 702 (2) (d) of the ordinance does not itself require a 10-foot buffer strip or, indeed, any buffer. Nor does it expressly refer to section 603 (6) and section 607 of the ordinance, wherein a buffer area 10 feet in width is required between parking and loading areas and "adjoining property in residence districts". Under section 501 of the ordinance, the general and controlling section which sets forth in detail the specific requirements, including

buffering where applicable, for all permitted uses in each of the various zoning districts of the City of Binghamton, no buffer area is required for any use within an R5-1 district. Thus, the Commission's interpretation of the screening requirement of section 702 (2) (d) to mandate a buffer zone was patently unreasonable. Moreover, the record establishes that the settled interpretation and practical application of the buffering requirements of the ordinance by the Commission's staff, which the Commission had never previously disputed, was to impose the requirement of a buffer area only where commercial or industrial parking or loading areas adjoined a residential zone. This construction accorded with the common zoning usage of "buffer area" *(see,* 1 Anderson, New York Zoning Law and Practice § 17.04, at 751-752 [3d ed]). For the Commission thus to have contradicted its prior, long-standing application of the statutory phrase without an explanation therefor was arbitrary and capricious *(see, Matter of Field Delivery Serv. [Roberts],* 66 NY2d 516, 518).

■■ The intervenors' remaining arguments for reversal do not require extended discussion. Where, as here, there were no questions of fact raised in the opposing papers, Special Term properly determined this proceeding summarily as a matter of law *(see, Matter of Battaglia v Schuler,* 60 AD2d 759). Consequently, there was no requirement for the court to have rendered a written decision *(cf.,* CPLR 7804 [h]). The intervenors' final contention is that the definition of home occupation in the ordinance (City of Binghamton Zoning Ordinance § 202 [25]) requires that any such use be actually conducted within the physical confines of the special use permit applicant's dwelling and that, therefore, Major's conduct of his practice in an unattached garage was not a permitted use. A reversal of Special Term on this basis, however, would be to uphold the Commission's determination on a ground not invoked by that agency, which would exceed the limits of this court's power of review *(see, Matter of Parkmed Assocs. v New York State Tax Commn.,* 60 NY2d 935, 936).

MAIN, J. P., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment affirmed, with costs against the intervenors.