■ In the Matter of PETER M. FITZNER et al., Respondents, v BARBARA BEACH, as Chairperson of the Town of Clifton Park Planning Board, et al., Appellants.—Mahoney, P. J. Appeal from a judgment of the Supreme Court (Brown, J.), entered April 11, 1990 in Saratoga County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Town of Clifton Park Planning Board denying petitioners' request for preliminary subdivision approval.

In October 1988, petitioners filed with respondent Town of Clifton Park Planning Board (hereinafter respondent) a preliminary application for the approval of a seven-lot subdivision of a 15.5-acre parcel of real property located in a special residential zoning district within the Town of Clifton Park, Saratoga County. Petitioners' proposal, which complied with the Town Code with respect to minimum lot size, was reviewed by the Town's Engineer and an initial meeting with respondent was held in November 1988. Respondent expressed concern regarding, *inter alia,* the adequacy of the water supply for the subdivision and the potential negative impact that petitioners' proposal might have on the historical integrity of the surrounding community.

A public hearing conducted in May 1989 revealed not only similar concerns of residents owning property adjacent to the proposed subdivision, but also their fear that the installation of seven additional wells in the proposed subdivision would lower the water level of the adjoining properties and affect on-site septic facilities. Pumping tests were conducted in Novem-

ber 1987, August 1988 and throughout the summer of 1989 under the supervision of engineers representing both the Town and petitioners. Petitioners also utilized hydrogeological experts. At the conclusion of the testing, both petitioners' engineer and its hydrogeological expert concluded that the utilization of seven residential water supply wells would not have an adverse impact on the groundwater supply sources currently providing water to the subject area. Petitioners' engineer further stated that "the percolation tests * * * performed on site indicate favorable conditions for sanitary disposal systems". He also stated that "the sanitary disposal systems proposed by the engineer are consistent with all generally accepted engineering standards and practices, including relevant [Department of Health and Department of Environmental Conservation] regulations".

A second public hearing on petitioners' application was conducted on October 11, 1989. In response to residents' continued concern regarding the impact the seven additional wells might have on existing wells, respondent requested petitioners to formulate some type of contingency plan in case the pumping capacity of any of the existing wells was diminished by the additional wells required for the subdivision. Based on their engineering reports of "no significant impact", petitioners declined to draft a contingency plan. At the conclusion of the hearing, respondent denied petitioners' application. Petitioners commenced a CPLR article 78 proceeding to annul respondent's determination. Supreme Court granted the petition and this appeal followed.

Respondent denied petitioners' application based on concerns regarding the adequacy of the water supply, the installation of septic systems, the historical impact the proposed subdivision would have on the surrounding community and the lack of a contingency plan. We address the issues seriatim.

With respect to the adequacy of the water supply, even the Town Engineer concluded that the installation of seven additional wells required for the new subdivision would not have an impact on the groundwater sources providing water to adjoining land owners. Here, the only opposition to the conclusions reached by petitioners' experts came in the form of generalized complaints by local residents. Accordingly, we conclude that it was improper to disregard expert testimony offered by petitioners in favor of generalized community objections *(see, Matter of Market Sq. Props. v Town of Guilderland Zoning Bd. of Appeals,* 66 NY2d 893, 895; *Matter of Pilato v Zoning Bd. of Appeals,* 155 AD2d 864, 865). Such complaints

or unsubstantiated fears cannot serve to justify respondent's denial of petitioners' application *(see, Dodson v Planning Bd., 163 AD2d 804, 806; Matter of Veysey v Zoning Bd. of Appeals, 154 AD2d 819, 821, lv denied 75 NY2d 708).* We reach a similar conclusion regarding the installation of additional septic systems. Accordingly, we find that respondent's denial of petitioners' application on either of these grounds was arbitrary and capricious.

Turning to the alleged impact on the historical nature of the surrounding community, we note that the subdivision site is zoned for such a purpose *(see, Matter of North Shore Steak House v Board of Appeals, 30 NY2d 238, 243; Matter of Ronsvalle v Blumenthal, 144 AD2d 766, 767)* and an archaeological survey of the proposed site was conducted which concluded that "[i]t does not appear that the proposed project will have any impact upon cultural resources within the project area". Similarly, the State Office of Parks, Recreation and Historic Preservation expressed the opinion "that this project [will] have [n]o [i]mpact upon archeological resources included in or eligible for inclusion in the National or State Registers of Historic Places".

With respect to petitioners' refusal to adopt a "contingency plan" to indemnify neighboring property owners against any potential water shortage, we note that both of the previously mentioned engineering reports concluded that the proposed subdivision would not significantly impact surrounding wells. Accordingly, although respondent is empowered under appropriate circumstances to impose reasonable conditions to mitigate demonstrable defects in petitioners' proposal *(see, Matter of Black v Summers, 151 AD2d 863, 864-865),* no reasonable basis exists to impose such a plan under the circumstances present here.

Accordingly, we conclude that Supreme Court was correct in granting petitioners CPLR article 78 relief annulling respondent's determination. We adhere to our policy, however, that when, as here, a planning board's decision is set aside, it is generally more proper to remit the matter rather than direct the planning board to issue final approval *(see, Matter of Castle Props. Co. v Ackerson, 163 AD2d 785).*

Weiss, Levine, Mercure and Harvey, JJ., concur. Ordered that the judgment is modified, on the law and the facts, with costs to petitioners, by reversing so much thereof as approved petitioners' subdivision application; matter remitted to respondents for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.