97 N.Y.2d 86 (2001)
761 N.E.2d 565
735 N.Y.S.2d 873
In the Matter of TALL TREES CONSTRUCTION CORP., Appellant,
v.
ZONING BOARD OF APPEALS OF THE TOWN OF HUNTINGTON, Respondent.
Court of Appeals of the State of New York.
Argued October 16, 2001.
Decided November 19, 2001.
*88 Flynn & Flynn, Huntington (Robert J. Flynn, Jr., of counsel), for appellant.
Thomas A. Abbate, P.C., Woodbury (Thomas A. Abbate of counsel), for respondent.
Chief Judge KAYE and Judges SMITH, LEVINE, CIPARICK, ROSENBLATT and GRAFFEO concur.

*89 OPINION OF THE COURT
WESLEY, J.
This case calls into question the effect of repeated tie votes rendered by the Town of Huntington Zoning Board of Appeals on petitioner's application for area variances. We conclude that when a quorum of the Board is present and participates in a vote on an application, a vote of less than a majority of the Board is deemed a denial.
In 1996, petitioner Tall Trees Construction Corporation applied to the seven-member Zoning Board of Appeals for the Town of Huntington for minor area variances, seeking to divide a 1.94 acre parcel of land into two lots, one of which would be a flagstaff lot,[1] and to construct a home on each. The property abuts the lot of Lawrence Lamanna, the vice-chair of the Board. Following a hearing on the application, the Board issued a "NO ACTION" decision when petitioner failed to obtain a majority vote in favor of the application: two members voted to deny the application; two voted to grant the application; two were absent; and Lamanna abstained. The Board ignored petitioner's subsequent letter requesting another vote.
Petitioner then commenced a CPLR article 78 proceeding seeking to annul the Board's decision and to direct the Board to grant the variances. Supreme Court, relying on Matter of Walt Whitman Game Room v Zoning Bd. of Appeals (54 AD2d 764, lv denied 40 NY2d 809), held that the Board's tie determination was a nonaction and remitted the matter to the Board for another vote on the application. The Appellate Division affirmed (262 AD2d 494). The Board, however, failed to conduct a new vote, and after repeated requests for compliance, *90 petitioner commenced a contempt proceeding against the Board. Only then did the Board consider the matter. Once again, it filed a "NON-ACTION" determination based on a vote identical to that rendered in the first.[2] The Board "authorize[d] the applicant to return" for a new hearing on the application.
Petitioner then initiated the present CPLR article 78 proceeding. Supreme Court granted the petition, annulled the Board's second decision and granted the requested variances. The court reasoned that under Town Law § 267-a (4), a tie vote of the Board should be deemed a denial of the variance. It noted that Matter of Walt Whitman could not be read to perpetuate an endless cycle of tie votes. Although expressing concern with some of the Board's actions and directives in this case, the Appellate Division reversed the judgment and remitted the matter to the Board for further proceedings, including a new hearing (278 AD2d 421). The Appellate Division again concluded that the Board's vote was not a denial of the application because a majority of the Board did not vote either for or against it. We granted leave to appeal, and now reverse.
Petitioner urges that when a quorum of the Board is present and participates in the proceedings on a variance application by actually casting votes, a tie vote failing to garner a majority to grant the application is not "nonaction" but, in effect, a denial. We agree.
Zoning Boards of Appeals were created "to interpret, to perfect, and to insure the validity of zoning" through the exercise of administrative discretion (2 Salkin, New York Zoning Law and Practice § 27:08, at 27-1427-15 [4th ed]). Often regarded as a "safety valve," Zoning Boards of Appeals are invested with the power to vary zoning regulations in specific cases in order to avoid unnecessary hardship or practical difficulties arising from a literal application of the zoning law (id. § 27:09, at 27-15).
General Construction Law § 41 and Town Law § 267-a govern the procedures of a Town Zoning Board of Appeals. Under *91 General Construction Law § 41, a majority of the members of a public board constitute a quorum and "not less than a majority of the whole number may perform and exercise such power, authority or duty." Town Law § 267-a (4) provides that "[t]he concurring vote of a majority of the members of the [zoning] board of appeals shall be necessary to reverse any * * * determination of any * * * administrative official [charged with the enforcement of any zoning ordinance or local law], or to grant a use variance or area variance" (emphasis added).
Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning; words are not to be rejected as superfluous (see, Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583; see also, McKinney's Cons Laws of NY, Book 1, Statutes §§ 94, 231). We have also recognized that statutes relating to the same subject matter must be construed together unless a contrary legislative intent is expressed, and courts must harmonize the related provisions in a way that renders them compatible (see, Matter of Dutchess County Dept. of Social Servs. v Day, 96 NY2d 149, 153; see also, McKinney's Cons Laws of NY, Book 1, Statutes § 221).
Applying these principles here, a plain and harmonious reading of the related statutes leads to the conclusion that although the participation of a majority of the Board is necessary for the Board to exercise its authority in considering a variance application, as long as a quorum is present and votes, a concurring vote of the majority is not required for that vote to constitute a denial of the application.
General Construction Law § 41 "allows valid action by a body so long as there is participation by `a majority of the whole number'" (Matter of Wolkoff v Chassin, 89 NY2d 250, 254 [emphasis added]). However, other than majority participation, that section imposes no specific voting requirement. On the other hand, Town Law § 267-a (4) mandates a concurring majority vote of the Board in order to "reverse" a determination of the appropriate administrative official (e.g., a Town building inspector) or to "grant" a variance application. Section 267-a (4) conspicuously fails to require the same majority vote concurrence for the denial of an application. Thus, if after participation and voting by a majority of the Board, no concurring vote of the majority exists to grant an application, the application must be, a fortiori, denied (see, Matter of Monro Muffler/Brake v Town Bd., 222 AD2d 1069; see also, Matter of Zagoreos v Conklin, 109 AD2d 281, 296).
*92 To the extent that Matter of Walt Whitman (54 AD2d 764, supra) holds to the contrary, that decision is not to be followed. In Walt Whitman, the same Board issued a nearly identical tie vote on a special use permit application. Applying General Construction Law § 41, the Appellate Division concluded that the vote was equivalent to nonaction. The Court relied on our decision in Matter of Squicciarini v Planning Bd. (38 NY2d 958). That reliance was misplaced. In Squicciarini, only three members of the seven-member Board voted on a motion to deny an application for a special permit, in direct contravention of the statutory requirement of General Construction Law § 41 of majority participation for effective action. Other cases are similarly inapposite (see, e.g., Matter of Jung v Planning Bd., 258 AD2d 865; Matter of Hoffis v Zoning Bd. of Appeals, 166 AD2d 850).
We find it curious that this particular Zoning Board of Appeals has a history of "nonaction" tie votes which, in effect, block an applicant's right to judicial review.[3] Adopting the Board's viewthat a tie vote on a variance application cannot be deemed a denialwould be contrary to the plain language of the statutes and, as was so aptly characterized by Supreme Court, would leave petitioner's application in "zoning purgatory"a place from which an applicant can escape only at the whim and pleasure of the Board. That is, most certainly, a result the statutes do not countenance.[4]
Having concluded that the tie votes were, in effect, a denial of petitioner's variance applications, we also agree with Supreme Court that the denial of the variances was arbitrary *93 and capricious and an abuse of discretion (see, Matter of Fuhst v Foley, 45 NY2d 441, 444 [citing Conley v Town of Brookhaven Zoning Bd. of Appeals, 40 NY2d 309]). In this case, the unrefuted evidence in the record is sufficient, as a matter of law, to support our conclusion that the variances should have been granted.
No factual findings, either supporting or opposing the requested variances, were provided by the Board. That, however, does not preclude judicial review of the determination. Courts have recognized that under circumstances where, as here, an application is rejected by a tie vote, "there exists and can exist no formal statement of reasons for the rejection" and, thus, an examination of the entire record, including the transcript of the meeting at which the vote was taken along with affidavits submitted in the article 78 proceeding can "provide a sufficient basis for determining whether the denial was arbitrary and capricious" (Matter of Zagoreos, 109 AD2d 281, 296, supra; see also, Matter of Meyer, 90 NY2d, at 145, supra [citing Matter of Canfora, 60 NY2d, at 351, supra]).
Nothing in the record supports the Board's denial of the variances. In determining whether or not to grant area variances, the Board is required "to engage in a balancing test, weighing the `benefit to the applicant' against `the detriment to the health, safety and welfare of the neighborhood or community' if the area variance is granted" (Matter of Sasso v Osgood, 86 NY2d 374, 384 [quoting Town Law § 267-b (3) (b)]). Moreover, "`[a] decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reasons for reaching a different result on essentially the same facts is arbitrary and capricious'" (Knight v Amelkin, 68 NY2d 975, 977 [citation omitted]).
Here, a review of the record reveals undisputed testimony from a real estate expert that this was the only lot of its size in the neighborhood; that if the variance to subdivide were granted, one parcel would be greater than one acre (the minimum lot size), the other parcel would be only slightly smaller than one acre and both would be "indistinguishable" from other neighborhood lots; that there are three other lots directly across the street that are smaller; and, finally, that the variances present no adverse impact on the neighborhood or real property values. Petitioner also presented unrefuted testimony from the Town's former Director of Environmental Control that there would be no adverse impact on the environment. Petitioner's president testified that the lots would meet all *94 other zoning requirements, including the side and rear yard setback conditions. Additionally, petitioner presented evidence that the Board had previously granted a similar variance application in the neighborhood and had noted in its decision that flagstaff lots were traditionally given the Board's imprimatur and that the neighborhood contained at least six other such lots.
Aside from general and conclusory assertions, the Board failed to identify any evidence to refute petitioner's claim that this case involves nothing more than a minor variance application which in prior similar circumstances was routinely granted (see, Matter of T.J.R. Enters. v Town Bd., 50 AD2d 836 [citing Matter of North Shore Steak House v Board of Appeals, 30 NY2d 238, 245-246]). Thus, because the benefit of granting the requested variances to petitioner is great and any detriment to the community and neighborhood is de minimis, and because nearly identical variance applications have been approved in the past, we conclude that the Board acted arbitrarily in failing to grant the requested variances.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.
Order reversed, etc.
NOTES
[1] This is an arrangement of adjacent property where one lot maintains the appearance of an ordinary rectangular parcel and the second parcel is located almost entirely behind the first, with only a narrow strip of land to access the road.
[2] We note that the Board's decision stated that the second vote was taken at the first opportunity that all of the members were in attendance. However, the Board does not dispute that the official minutes of the May 21, 1998 meeting, at which the second vote was allegedly taken, make no reference to a vote on petitioner's application. The official minutes also reveal that Board Member Kurtzberg, who is recorded in the Board's decision as voting in favor of the application, was not present at the May 21, 1998 meeting. Board Member Settle who, according to the Board's decision, was absent, actually was present and voted on other applications.
[3] The Board's actions also appear to violate Town Law § 267-a (8), which requires that the Board "shall" render its decision "within [62] days after the conduct of said hearing." The Legislature recognized that a specific time period was necessary to "rule out the possibility of a lengthy delay which may cause so substantial a hardship that a favorable decision may be of no value" (Sponsor's Mem of Assembly Member Arthur J. Kremer, Bill Jacket, L 1966, ch 657, at 1). Further, with a prompt Board decision "an applicant would be able to prepare for * * * court review * * * an unfavorable decision so as to have a prompt judicial determination of the merits of his case" (id.).
[4] We have in at least one other context concluded that a tie vote by a public agency constituted a denial. An application for accidental disability retirement benefits for police officers and firefighters must be approved by a majority of the appropriate fund's Board of Trustees (see, Administrative Code of City of NY § 13-216 [b]; § 13-316 [b]). This Court has long held that a tie vote is deemed a denial of those benefits which is then subject to judicial review (see, e.g., Matter of Meyer v Board of Trustees, 90 NY2d 139; Matter of Canfora v Board of Trustees, 60 NY2d 347; see also, Matter of City of New York v Schoeck, 294 NY 559).